[No. 10982.   Department Two.   September 6, 1913.]

C. P. THOMAS *et al.*, *Respondents*, v. GROTE-RANKIN COMPANY, *Appellant*.[1]

SALES — BONA FIDE PURCHASER — PAYMENT OF ANTECEDENT DEBT. The consideration for a transfer of furniture was an antecedent debt, so that the vendee was not a *bona fide* purchaser for value, where it appears that the transfer was made in a settlement between the parties, that the vendors were at the time indebted to the vendee in a large sum, that after accepting notes and a mortgage for $20,-575, there remained a balance on the indebtedness amounting to $3,465.51, and the vendee's bookkeeper testified that the furniture was taken for such balance.

LANDLORD AND TENANT—LIEN FOR RENT—PRIORITY—SUBSEQUENT PURCHASERS. A landlord's lien for rents, reserved in the lease upon all furniture brought upon the premises, valid as between the parties but not recorded as a chattel mortgage, is superior to the rights of a subsequent purchaser without notice, where such purchaser took in consideration of an antecedent debt and was, therefore, not an incumbrancer or subsequent purchaser for value, within the meaning of the recording acts.

SAME—RENT—WAIVER—TAKING OTHER SECURITY. A landlord's lien for rent, reserved in a lease upon furniture brought upon the premises, is not waived by the taking of additional security in the form of a chattel mortgage.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered July 31, 1912, upon findings in favor of the plaintiffs, in an action for conversion, tried to the court. Affirmed.

*Twitchell & Wentworth* and *Charles P. Lund*, for appellant.

*Danson, Williams & Danson* (*George D. Lantz* of counsel), for respondents.

MAIN, J.—The purpose of this action is to recover damages for the alleged conversion of certain hotel furniture. On January 11, 1909, the plaintiffs were the owners of the north 175 feet of lot 5, in block 13, of Resurvey and Ad-

[1]Reported in 134 Pac. 919.

dition to Spokane Falls (now Spokane), Washington, upon which tract of ground there had been erected a three-story brick building, known as the Colonial Building. On the date above mentioned, the plaintiffs leased the second and third floors of the building, hereafter referred to as the Colonial Hotel, to one Alex Clitsome, for the term of two years, at the monthly rental of $627, payable on the first day of each and every month. By the terms of the lease, it was provided that the owners (plaintiffs) should have a lien upon all property theretofore and thereafter brought upon the premises, for the purpose of securing the rent. On April 24, 1909, Clitsome assigned the lease to one Katherine Merrill, which assignment was approved by the plaintiffs. On July 6, 1909, Katherine Merrill assigned the lease to B. C. Wiltse and L. Mae Wiltse, to which assignment the plaintiffs consented. On September 21, 1909, the Wiltses, by conditional sale contract, sold the property in the Colonial Hotel to one Fred W. Goddard. The Wiltses placed Goddard in possession of the premises. The lease, however, was not assigned to Goddard, and the plaintiffs at no time recognized him as their tenant. During the month of November, 1910, rent in the sum of $1,140 was due and unpaid. The plaintiffs, being aware of the conditional sale contract covering the furniture and the lease, took from Goddard a chattel mortgage in the sum of $1,140 upon the furniture and personal property in the Colonial Hotel.

On June 2, 1911, rent being due and unpaid in the sum of $2,125.80, suit was commenced against the Wiltses and Goddard to foreclose the lien provided for in the lease. On June 5, 1911, the defendant learned of the pendency of that action, and caused its attorney to investigate the same. On June 10, 1911, at about six o'clock in the morning, the defendant sent to the Colonial Hotel a number of moving vans, and removed all of the furniture and personal property from the Colonial Hotel, against the protests of the plaintiffs and Goddard. On August 19, 1911, a decree was entered in the

foreclosure action against the Wiltses and Goddard, and the sale of the furniture and hotel fixtures ordered. At this time, however, the defendant had sold a portion of the goods and had so commingled the remainder with other goods that they could not be identified.

During the spring of the year 1910, the Wiltses were operating what was known as the Holland Hotel, in Seattle. They had purchased a large amount of furniture from the Grote-Rankin Company upon credit, and to secure the payment of the same executed a chattel mortgage; and also at the same time, as security, assigned and delivered to the Grote-Rankin Company a copy of the conditional sale contract which had been given to Goddard, and endorsed over Goddard's notes. The Wiltses defaulted in the payments, both upon the furniture and in the rent for the Holland Hotel. Litigation followed, which resulted in a settlement which took place between May 31, 1911, and June 2, 1911. By this settlement, the Grote-Rankin Company returned to the Wiltses the notes covered by the chattel mortgage on the Holland Hotel furniture, and released the mortgage, but continued to hold the copy of the conditional sale contract given by the Wiltses to Goddard on the Colonial Hotel property in Spokane and also the Goddard notes. It appears that, as a part of the settlement, it was orally agreed that the Grote-Rankin Company was to have the rights of the Wiltses to the furniture and property in the Colonial Hotel. The possession of the furniture was not delivered. The only possession taken by the Grote-Rankin Company was that stated.

There is little, if any, dispute as to the facts in this case. What controversy there is relative thereto arises over the inferences drawn from the undisputed facts, rather than a dispute as to the facts themselves.

The cause was tried to the court without a jury. Judgment was entered in favor of the plaintiffs for the sum of $2,-

152.80, with interest thereon from the 19th day of August, 1911. The defendant appeals.

The questions which are determinative of this case are: First, did the appellant have notice of the lien claimed by the respondents? Second, was the furniture in the Colonial Hotel at Spokane by the oral agreement sold to the appellant in payment of an antecedent debt? Third, if the transfer were made in payment of an antecedent debt, was the appellant a purchaser for value? Fourth, if the appellant were not a purchaser for value, are its rights superior under the oral contract to the lien claimed by the respondents? Fifth, did the taking of a chattel mortgage from Goddard as conditional security for a part of the claim waive the lien *pro tanto?*

I. It is argued that the appellant, prior to May 31, 1911, had knowledge and notice of sufficient facts concerning the rights of the respondents to put it upon inquiry. In fact, the trial court made a finding to that effect. The finding, however, recites no facts which would furnish knowledge or notice. It is more of a conclusion than a finding of fact. In the respondents' brief, we are directed to no place in the record where the facts, if any, may be found which would show knowledge or notice sufficient to put the appellant upon inquiry; and a diligent search of the record has failed to disclose such facts. It must, therefore, be held that the appellant, at the time of the oral contract of purchase, had neither express nor implied notice of the preexisting lien claimed by the respondents.

II. On the question as to whether or not the consideration for the transfer was an antecedent debt, it appears that, at the time the Wiltses made the settlement with the appellant relative to the Holland Hotel in Seattle, they were indebted to the appellant in a large sum of money. It was arranged that the Holland Hotel should be taken over by one Sharp; he in turn giving his notes secured by a mortgage to the appellant for a certain amount therein agreed upon. The Sharp mortgage was for $20,575. In addition to this, there

was a balance of the indebtedness not taken care of by that mortgage in the sum of $3,465.51. One Wraight, the book-keeper of the appellant, on cross-examination testified as follows:

"Q. Now, what knowledge have you personally, Mr. Wraight, about this furniture in the Colonial Hotel taken for the difference in these sums that you referred to? You testified that the entire amount of everything, according to the figures here used, $24,040.51 of the amount that Sharp gave a mortgage for, was $20,575, leaving a difference of $3,465.51. That you took this Colonial furniture for the difference? A. Yes, sir."

It appears that the appellant, at the time of the settlement, also paid the Wiltses the sum of $75. From the record, the reason for this payment does not clearly appear. As already stated, at the time of this settlement, which occurred between May 31st and June 2d, the Wiltses were indebted to the appellant in a large sum of money, when the settlement took place and the furniture in the Colonial Hotel by oral agreement was transferred to the appellant subject to the conditional sale contract held by Goddard. It would seem plain that this furniture was taken over in payment of an antecedent debt.

III.    The transfer being made in payment of a preexisting debt, the appellant is not a purchaser for value. In *Hicks v. National Surety Co.*, 50 Wash. 16, 96 Pac. 515, it is said:

"The instrument under which the appellant claims was taken as security for a pre-existing debt or a pre-existing contingent liability. Under such circumstances does it come within the definition of an incumbrancer for value and in good faith, as that term is defined in law? Under the great weight of authority it does not [citing authorities]."

IV.    The lease in which the lien was provided for under which the respondents claim, was not executed or recorded with the formality required to constitute it a chattel mort-

gage. It was valid, however, between the parties. The question then is, are the respondents' rights under the lease, which was only good between the parties, superior to the rights of the appellant, it not being a purchaser for value. The rule is that a subsequent purchaser, in order to prevail over the prior lien good only as between the parties, must show that he is a purchaser for value. In *Mendenhall v. Kratz*, 14 Wash. 453, 44 Pac. 872, it is said:

"But an incumbrancer or subsequent purchaser, in order to avail himself of an omission of the affidavit, or of a failure to acknowledge or record the instrument, must be able to show that he is an incumbrancer for value and in good faith."

In the present case, the appellant was a purchaser without notice, but under the rule adopted in *Hicks v. National Surety Co., supra*, it was not a purchaser for value; and under the rule announced in the *Mendenhall* case, it not being a purchaser for value, the prior lien claim of the respondents would be superior to its title to the property taken in payment of a preexisting debt.

V. It is claimed that, inasmuch as the respondents took from Goddard additional security in the form of a chattel mortgage on September 30, 1910, for $1,140, that the lien was in any event waived to that extent. The rule appears to be that the taking of other security for a debt secured by a lien does not constitute a waiver unless from the circumstances or the nature of the security it appears to have been so intended. In 19 Am. & Eng. Ency. Law (2d ed.), p. 29, the rule as there stated is:

"The mere taking of other security for a debt secured by a lien does not, as a rule, constitute a waiver of the lien. To constitute a waiver an intention to waive the lien must appear from the circumstances of the case or from the nature of the security taken."

A number of other questions are presented in the briefs which need not be here discussed, for the reason that the

conclusions upon the questions above mentioned are decisive in any event. The judgment is affirmed.

CROW, C. J., ELLIS, and FULLERTON, JJ., concur.