[No. 15989.    Department Two.    January 19, 1921.]

GUARANTY SECURITY COMPANY, *Respondent,* v. R. J. COAD, *Defendant,* B. B. HORRIGAN, *Garnishee, Appellant.*[1]

ACTION (26) — CONSOLIDATION — GARNISHMENTS. Two garnishment proceedings are properly consolidated where they both had for their purpose the impounding of certain promissory notes and their proceeds, belonging to the judgment debtor or his alleged transferee, and the effect of the consolidation was to protect the maker of the notes against double liability thereon.

LIMITATION OF ACTIONS (82)—AVAILABILITY—PERSONAL NATURE OF DEFENSE. The statute of limitations is a defense personal to the debtor, and does not prevent a voluntary payment of the debt by the transfer of promissory notes by a failing debtor.

FRAUDULENT CONVEYANCES (92, 97)—PREFERENCE OF RELATIVES— PAYMENT OF DEBT — EVIDENCE — SUFFICIENCY. A preference of a brother-in-law by the transfer of notes in payment of an outlawed debt, is not shown to be fraudulent as to a judgment creditor, who

[1] Reported in 195 Pac. 22; 197 Pac. 326.

had instituted garnishment to impound the notes, where it is un-disputed that the notes were sent and received in payment of the debt, and the assignee had no knowledge of the judgment or garnishment proceedings.

BILLS AND NOTES (64, 69)—BONA FIDE PURCHASERS—ACTUAL NO-TICE—PRE-EXISTING DEBT. A debtor, taking promissory notes in payment of the debt, without notice of an infirmity, is a *bona fide* holder for value, within Rem. Code, § 3447, defining notice of an infirmity, and Id., § 3416, providing that an antecedent or pre-existing debt constitutes value.

SAME (68)—BONA FIDE PURCHASERS—TAKING AS COLLATERAL SE-CURITY. The transfer of notes to a creditor for the purpose of collecting what he could and applying it on an antecedent debt constitutes a holding as collateral, within Rem. Code, §§ 3417, 3418.

ON REHEARING.

SAME (64, 69). A debtor taking promissory notes in payment is not a *bona fide* holder where the notes were past due and subject to the lien of a garnishment.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 28, 1920, upon findings in favor of plaintiff, in consolidated garnishment proceedings involving the title to promissory notes. Reversed.

*C. M. O'Brien,* for appellant.
*Davis & Heil,* for respondent.

HOLCOMB, J.—Respondent, having a judgment in the superior court of Spokane county for $420, with legal interest from date of judgment, February 19, 1919, sued out a writ of garnishment, on October 23, 1919, against, and had the same served upon, appellant, on the next day. Appellant answered in due time, denying any indebtedness to defendant, admitting that he had in his possession promissory notes signed by Charles Frazier, payable to the order of R. J. Coad; and alleged that he held the notes as the property of one Charles Babbitt. Respondent controverted this

answer, denied that the notes belonged to Babbitt, and alleged that they belonged to defendant Coad.

A prior writ of garnishment had issued and been served against Charles Frazier, on March 5, 1919. That garnishee defendant answered in due time, admitting the execution of seventeen promissory notes to defendant Coad, the first of which fell due February 13, 1919, and one on the same day of each month thereafter, each bearing interest at the rate of seven per cent per annum. He also alleged that Coad had left the state of Washington, and was, as he believed, at the time residing in Colorado, and had the notes in his possession, or had transferred the same.

This answer was controverted and, upon the issues framed, a hearing was had in the superior court on September 22, 1919, but not concluded, the hearing having been continued by order of the judge in order to get further evidence to discover who then owned the notes so that the maker of the notes might not have to pay them twice. The deposition of defendant Coad had been taken in this prior proceeding, wherein he testified that, about May of that year, he had transferred and indorsed the notes to Charles Babbitt, of Milwaukee, Wisconsin, in payment of a pre-existing indebtedness of approximately $500, incurred in 1911 or 1912, for money loaned him by Babbitt, and interest; that no additional sum was paid him by Babbitt at or about the time of the transfer; that he knew, at the time of the transfer, that a judgment had been obtained by respondent in Spokane county, Washington; that he was informed by letter from Frazier, about June or July, 1919, of the garnishment against Frazier; that he never informed Babbitt of the judgment, nor of the Frazier garnishment; that he transferred the notes to Babbitt to pay his long-existing debt to him, and considered it paid; that he was in

Denver, Colorado, and Babbitt in Milwaukee, Wisconsin, when the transfer was made by correspondence by mail. The deposition of Babbitt was then also taken in the Frazier matter, in Milwaukee, Wisconsin. Babbitt testified that he was a brother-in-law of defendant Coad; that Coad sent him, by mail, notes aggregating $550, indorsed by Coad unrestrictedly, in the fore part of July, 1919; that, on October 2, 1919, he received, by mail, a second batch of notes, aggregating $150, from Coad, indorsed, unrestricted, by Coad; that Coad owed him $500 for money loaned him in 1912 and for living expenses of Coad and wife, and interest, upon open account; that he received no notice of any judgment against Coad, or of any garnishment against the notes; that he received the notes in payment of his account and interest; that Coad owed him nothing; that he intended to write Coad that he (Babbitt) had received the notes in settlement of Coad's indebtedness; that he had had no previous arrangement with Coad for the transfer and acceptance of the Frazier notes in settlement of Coad's indebtedness; that he had mentioned Coad's indebtedness to him about three years before, when Coad had visited him, and Coad had then promised to pay or settle part or all of the debt as soon as he could; that he (Babbitt) had sent each batch of notes to appellant, an attorney of Pasco, Washington, who had been attending to some property in Pasco for several years for Babbitt, but whom he did not personally know, within two or three days after the receipt thereof each time, for collection for him (Babbitt).

No other evidence was taken at the hearing of the garnishment proceeding against appellant, except the evidence of Frazier and the deposition of Babbitt taken in the Frazier hearing. There was no evidence controverting the testimony of any of those witnesses.

Appellant, contending that the two garnishment proceedings were entirely independent of each other, and that he is not to be bound by testimony taken in any other proceeding than the proceeding against himself, urged as error the admitting in evidence in the trial of these proceedings the testimony of Charles Frazier, taken in the former garnishment proceeding, and the deposition of Coad.

The court, however, consolidated the two proceedings and gave permission to appellant to intervene on behalf of Babbitt, if he desired, but Babbitt did not desire to do so. However, the interests of justice were best subserved by consolidating the two proceedings. The object of both was, of course, to impound the notes, or the proceeds thereof, for application to the judgment of respondent against Coad. In the interests of justice, Frazier should have been protected, and was protected, by the court against double liability on the notes. The question properly to be determined was, Who, at the time of the second garnishment, was the legal owner of the notes in question? And that could not be determined without taking the testimony of those having primary knowledge of all transactions relating to the notes. It was a matter of discretion, therefore, for the court to consolidate the two garnishment proceedings, continue the first one, and consider all the testimony in the last one; and of this appellant has nothing to complain.

The decisive question in this case is, as appellant states it, Were the notes in the hands of appellant, at the time the writ of garnishment was served upon him October 24, 1919, the property of Coad or Babbitt?

The trial court found that, at the time of the transfer of the notes from Coad to Babbitt, Coad was indebted to Babbitt for over $500, besides several years' inter-

est. Indeed, he could find nothing else; for there was no testimony in any way controverting. Coad testified that the notes were transferred to Babbitt in payment of his indebtedness to Babbitt; and Babbitt testified that he took the notes from Coad in payment of his indebtedness, and sent them to his attorney, the appellant, for collection. It is true that Coad's debt to Babbitt existed only upon open account, and that it apparently could have been successfully defended against by reason of the statute of limitations. But the statute of limitations can only be invoked by the debtor himself. The debt, nevertheless, exists, and there is a moral obligation to pay it. For the sake of public policy, debtors are permitted by statutes of limitation, after the lapse of a certain time, to plead the statute as a bar to the collection of the ancient debt. But no one else can invoke it but the debtor; and if the debtor desires to prefer a creditor, he has, under the unbroken decisions of this state, the right to do so; and he may prefer a creditor whose debt might be barred by the statute of limitations, if plead, and does so in good faith.

Now, it is true that Babbitt is a brother-in-law of Coad's; that the debt from Coad to Babbitt upon open account was seven years old at the time of the transfer; that Coad himself knew that there was a judgment in Spokane county against him for $420 and interest; and that a writ of garnishment had been issued out of the superior court of Spokane county against Frazier, the maker of the notes, seeking to impound the notes, or the proceeds thereof. But there is no dispute on the fact that, when Coad transferred the notes to Babbitt, he did not inform Babbitt of the existence of any judgment against Coad, or of any

writ of garnishment against the notes; and Babbitt
took the notes without any such knowledge, or notice
which would put him upon inquiry.

The trial court, in deciding the case, said that he
would,

" . . . have grave doubts whether the assignment
of these notes by Mr. Coad to Mr. Babbitt was a *bona
fide* transaction. In the first place, the original in-
debtedness was not insisted upon by Mr. Babbitt. He
said that he did not ask Mr. Coad to pay it, running
on from year to year, the relation of brother-in-law,
in fact, existed between them, there was never a note
taken, never a memorandum required, never a written
account made of the advances made from time to time.
Under the circumstances it might almost be regarded
as a gift by Mr. Babbitt to Mr. Coad. Yet even assum-
ing that there was an indebtedness originally from
Coad to Babbitt, it seems to me that the assignment
of these notes, or rather the surrender of these notes
by Coad to Babbitt was such that they could not be
considered as an assignment of the notes, but that they
were merely handed over to Babbitt—I think so far
as Coad is concerned undoubtedly for the purpose of
avoiding this garnishment—so far as Babbitt is con-
cerned that he might get out of them what he could.
There was no previous correspondence between them
at all. Babbitt did not look into the solvency of the
maker, did not see whether the notes were worth any-
thing or not, simply took them, . . . "

The trial court further suggested that, where there
is a series of notes, such as existed here, a party who
takes some of them overdue would take the rest of
them with notice of the defect that exists with refer-
ence to all of them.

It requires more than mere doubt to set aside a
transfer by one to another—even though a relative—
as a transaction in bad faith. In *National Surety Co.
v. Udd,* 65 Wash. 471, 118 Pac. 347, involving an al-

leged fraudulent transfer by a deed to a relative (cousin), we held the evidence to be insufficient to warrant the setting aside of a deed as fraudulent as to creditors, although the grantor was converting his real property into money with fraudulent intent to avoid payment of a judgment in a pending suit, where it appeared that the grantee, a cousin of the grantor, was also a creditor and took the conveyance in discharge of an antecedent indebtedness, and it was not shown that he had such notice of the pending suit, or so participated in the grantor's fraud as to cause him to lose the preference, the burden of proof to establish such notice being upon the plaintiff. And in that case we pointed out that there were many circumstances tending to cast suspicion upon the transaction, but that they were not sufficient to show bad faith on the part of the grantee.

Coad, the payee of the notes, had departed from this state, was residing in another state, and had taken the notes with him at the time of the attempted impounding of the notes or the proceeds thereof by the writ of garnishment on Frazier. It is true that, after notice of the garnishment against Frazier, Coad was in another state, transferred and indorsed the notes to his relative, Babbitt, and delivered them to him, without any notice or information to him that there had been a garnishment issued against the maker of the notes.

Section 3447, Rem. Code, provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Section 3416, Rem. Code, provides:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; . . . "

With these sections of the statute in view, and it being indisputably established that Babbitt received the notes without any notice of infirmity in them or defect in the title of Coad, or knowledge of such facts that his action in taking them amounted to bad faith, and the statute that an antecedent or pre-existing debt constitutes value, there can be no question but that Babbitt became, before the writ of garnishment against appellant, a *bona fide* holder for value, without notice, of the notes.

As was held in *Citizens' Bank & Trust Co. v. Limpright,* 93 Wash. 361, 160 Pac. 1046:

"There can be no imputation of bad faith from the fact of taking negotiable paper, fair on its face, without active inquiry, nor by mere speculation as to diligence or negligence, and evidence going no further, and showing no actual notice, is insufficient to sustain findings that plaintiff was not a *bona fide* purchaser for value." (Syllabus)

And, again, in *National City Bank v. Shelton Elec. Co.,* 96 Wash. 74, 164 Pac. 933, we held:

"Under Rem. Code, § 3447, providing that to constitute notice of a defect in the title of the person negotiating a promissory note, the person to whom it is negotiated must have actual knowledge of the defect, the rights of the holder are to be determined by the simple test of honesty and good faith, and it is not enough that the holder was negligent or omitted precautions dictated by prudence." (Syllabus)

To the same effect, see *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042; and *Scandinavian-American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102.

Even though, as the trial court suggested, the notes were accepted by Babbitt, not in settlement and satisfaction of his debt, but for the purpose of collecting what he could and applying the same to his debt, that would constitute a holding as collateral; and in that case, in *German American Bank v. Wright*, 85 Wash. 460, 148 Pac. 769, Ann. Cas. 1917D 381, we held that, under the statutes heretofore quoted, and other statutes, as follows:

"§ 3417. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time;

"§ 3418. Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien;"

such holder would be entitled to protection to the extent of the amount of his debt against the payee and transferrer of the negotiable instrument. See, also, cases there cited.

We are therefore obliged to conclude that, under the statutes and the adjudicated cases, the trial court erroneously found and concluded that Babbitt was a holder not in good faith, for value; and the judgment must be reversed. It is so ordered.

MOUNT, MITCHELL, and TOLMAN, JJ., concur.

### ON REHEARING.

[Department Two. April 5, 1921.]

PER CURIAM.—On petition for rehearing filed by respondent in this case, issue was taken with the determination in the decision made herein, that the five notes aggregating $125, which were transferred to

Babbitt after their maturity, made Babbitt a *bona fide* holder for value, without notice; insisting that Babbitt could not have been a *bona fide* holder in view of the fact that they were all transferred subsequently to the date of service of the writ of garnishment upon Frazier, the maker of the notes. Respondent demands that a rehearing be granted or the judgment modified as to the five notes transferred as being due at the time of their transfer to Babbitt.

Answering the petition for rehearing or for modification, appellant says that he has always been willing to concede, and does concede, that whatever rights respondent acquired by his writ of garnishment against Frazier would not reach the past due notes for $125. Appellant offers that the decision herein filed January 19, 1921, be modified as follows:

After the clause reading, "There can be no question but that Babbitt became, before the writ of garnishment against appellant, a *bona fide* holder for value, without notice, of the notes," adding thereto the following clause: "except as to the $125 of past due notes, of which he became the owner subject to the lien of the writ of garnishment."

This modification is adopted by the court, and the opinion will be modified accordingly, so as to read as follows:

"With these sections of the statute in view, and it being indisputably established that Babbitt received the notes without any notice of infirmity in them or defect in the title of Coad, or knowledge of such facts that his action in taking them amounted to bad faith, and the statute that an antecedent or pre-existing debt constitutes value, there can be no question but that Babbitt became, before the writ of garnishment against appellant, a *bona fide* holder for value, without notice, of the notes, except as to the $125 of past due notes of

which he became the owner subject to the lien of the writ of garnishment against Frazier."

In all other respects, the petition for rehearing is denied.