[No. 17053.   Department One.   October 21, 1922.]

NATIONAL CITY BANK, *Respondent,* v. PARKER-BELL
LUMBER COMPANY, *Appellant,* NORTHERN
PACIFIC RAILWAY COMPANY *et al.,*
*Defendants.*[1]

CARRIERS (14, 14-2)—BILL OF LADING—NEGLIGENCE OF CONSIGNOR—
BONA FIDE PURCHASERS—RIGHTS AND LIABILITIES OF PARTIES. Where
the shipper of a car of lumber, through the negligence of its bank
messenger, permitted the consignee named in the bill of lading,
with sight draft attached, to abstract and retain the documents with-
out paying the amount of the collection, whereupon the consignee
procured an exchange bill and loan and checked out the amount,
and became insolvent, and the shipper disposed of the car else-
where and for several days failed to take notice of the fact that
it was not in the possession of the bill of lading, which, under the
well known commercial practices, might be used just as it was
used, the shipper is liable to the bank for the amount lost in the
loan, as the one of two innocent persons whose imprudence enabled
a third person to commit the fraud.

INTEREST (16)—RATE—STIPULATIONS AS TO INTEREST. On recovery
for loss of a loan of $1,100 drawing eight per cent interest, sustained
through the negligence of defendant, the judgment should be for
$1,100 with interest at eight per cent, rather than at the legal rate.

Appeal from a judgment of the superior court for
King county, French, J., entered November 17, 1920,
upon findings in favor of the plaintiff, in an action to
recover a loan, tried to the court.   Affirmed.

*William H. Gorham, Bausman, Oldham, Bullitt &
Eggerman,* and *Walter L. Nossaman,* for appellant.

*Guie & Halverstadt* and *Poe & Falknor,* for re-
spondents.

MITCHELL, J.—On December 12, 1916, the Parker-
Bell Lumber Company delivered to the Northern Pa-
cific Railway Company at Pilchuck, Washington, a

[1]Reported in 210 Pac. 10.

carload of lumber for shipment to Utica, New York, covered by a straight bill of lading naming the shipper as consignor and the Buckeye Lumber Company of Seattle as consignee, the shipment to be made over the Northern Pacific, Chicago & Northwestern, and New York Central railroads. The bill of lading was sent by the shipper to its bank in Seattle, with sight draft attached for $1,151, the price of the lumber, drawn against the Buckeye Lumber Company. The documents were received by the bank on December 14, and on that day were presented by it for payment to the Buckeye Lumber Company. The bank's messenger was expected to make collection, or preserve and return the documents to the bank. It happened, as was frequently the case, that, upon presentation of the documents, the Buckeye Lumber Company requested and was allowed to retain them for comparison with an invoice it claimed to have received, while the messenger was attending to other similar transactions with other brokers in the same building. The messenger failed to collect upon his return and received from the Buckeye Lumber Company the draft, together with a bill of lading for some former shipment by the Parker-Bell Lumber Company to the Buckeye Lumber Company. The draft and substituted bill of lading were taken back by the messenger and delivered into the collection department of the bank, where they remained until January 11, 1917, at which time they were returned to the shipper. The Buckeye Lumber Company became insolvent January 1, 1917.

It appears that neither the messenger of the bank, the bank, nor the Parker-Bell Lumber Company was ever aware that the Buckeye Lumber Company had abstracted and retained the bill of lading of December 12, originally accompanying the draft, until after the insolvency of the Buckeye Lumber Company. During

this time, about noon on Saturday, December 16, just before the close of banking hours for the day, the Buckeye Lumber Company applied to the National City Bank of Seattle and procured a loan of $1,100, evidenced by its demand note bearing interest at the rate of eight per cent per annum, upon the faith of a purported exchange bill of lading issued by the Chicago & Northwestern Railroad Company to the Buckeye Lumber Company as consignor, and Nellis, Amos and Swift of Utica, New York, as consignee, for the carload of lumber shipped from Pilchuck on the 12th, together with an invoice of the lumber by the Buckeye Lumber Company to its customer at Utica, New York, in the sum of $1,597.62. The exchange bill of lading and the invoice of the lumber were duly assigned in writing with directions to the customer at Utica to remit to the National City Bank of Seattle, which assignments were delivered to the bank at the time the $1,100 loan was negotiated. The $1,100 were not to be paid at once to the borrower, and, of course, could not be paid out on check earlier than the next following Monday.

Promptly, according to the practice of the National City Bank in such cases, it called upon the agent of the Chicago & Northwestern Railroad Company in Seattle, about one o'clock Saturday, to verify its issuance of the exchange bill of lading, and learned that the exchange bill had not been issued by the railroad company. Upon having its attention called to this information, the Buckeye Lumber Company explained that it was a mistake of its office, wherein frequently there were prepared exchange bills of lading and duplicates thereof on forms provided by the Chicago & Northwestern Railroad Company to be signed by the agent of that railroad company, sometimes in the office

of the lumber company, and at other times in the office of the agent of the railroad company, and that the matter would be straightened out at once. Accordingly, and later on that same day, the agents of the Chicago & Northwestern Railroad Company did issue its exchange bill of lading in form the same as the one theretofore repudiated by it, and delivered it to the Buckeye Lumber Company, who in turn delivered it to the National City Bank. Early Monday morning the National City Bank again called on the agents of the Chicago & Northwestern Railroad Company and was informed that the exchange bill of lading now held by the bank was genuine, and that the Buckeye Lumber Company had delivered the original Northern Pacific bill of lading for which the exchange bill had been issued. Thereupon, on Monday and shortly following, the Buckeye Lumber Company checked out all of the $1,100 borrowed on the 16th. In February, 1917, the carload of lumber not having gone out of the possession of the Northern Pacific Railway Company, the Parker-Bell Lumber Company got possession of it from the Northern Pacific and disposed of it to some one other than Nellis, Amos & Swift. Thereupon this suit was brought by the National City Bank against the Parker-Bell Lumber Company and the Northern Pacific Railway Company. The Northern Pacific Railway Company was dismissed out of the case, from which no appeal has been taken. Upon the trial there were findings for the plaintiff. Among other things, it was decided by the trial court that, during the entire transaction, the National City Bank exercised reasonable care and prudence, and that the Parker-Bell Lumber Company is estopped to claim that the bank is not entitled to recover the amount it loaned to the Buckeye Lumber Company, with interest thereon. From a

judgment for the bank, the Parker-Bell Lumber Company has appealed.

The Parker-Bell Lumber Company admitted the carload of lumber was reasonably worth $1,151. On December 16, 1916, and for some time thereafter, the Buckeye Lumber Company and its officers had a good reputation for honesty and integrity in their business dealings. The respondent bank had no knowledge whatever of the manner in which the original bill of lading came into the possession of the Buckeye Lumber Company until long after that lumber company became insolvent. The evidence shows that a very large amount of business is done by which the manufacturers of lumber sell and consign their products to lumber brokers in Seattle, shipments to be made to eastern points, and that the bills of lading issued by the initial carrier direct and specify the connecting carriers over which the shipment is to go; that the manufacturer collects through its bank from the broker by transmitting the bill of lading with sight draft attached, and that, in turn, the broker meets the payment by borrowing money from his bank upon his note and pledging an assignment of the original bill of lading, or an exchange bill of lading designating the broker as consignor and his customer in the east as consignee, together with an invoice by the broker to his purchaser, duly assigned, with an order on the purchaser to remit to the bank loaning the money. The trial court found, upon an abundance of evidence, that such manner of doing business in the lumber, banking and transportation business was well known to the public generally and to each of the defendants in this action at all times stated in the complaint, and for many years prior thereto.

It is contended by the appellant that the fraudulent

2—122 WASH.

withdrawal of the initial bill of lading by the Buckeye Lumber Company from the documents left with it by the agent of the appellant when collection was attempted on December 14 rendered unavailing all subsequent documents and transactions resting upon the faith of the initial bill.

The case of *Quality Shingle Co. v. Old Oregon L. & S. Co.,* 110 Wash. 60, 187 Pac. 705, has been cited and discussed by the parties on this appeal. That case, however, was decided upon the act of Congress relating to bills of lading in interstate and foreign commerce, approved August 29th, 1916, U. S. Stat. at Large, vol. 39, ch. 415, p. 538. By the terms of that act it did not go into effect until January 1, 1917, and confessedly was not in force at the date of the transaction involved in the present case. However, it is argued by the appellant that that case is a correct exposition of the common law rule and that its principles will have to be overruled if the judgment in the present case is permitted to stand. That case and the present one are dissimilar. There the equities of the seller, who had acted promptly upon the discovery of the failure of consideration for the sale of the shingles covered by the bill of lading, were protected and enforced against an innocent purchaser because of the specific terms of the Federal statute applicable to the situation. There was in that case no question whatever of conduct on the part of the losing party reasonably calculated to inflict loss upon the other party, which we think is the controlling consideration in the present case. The right of either the Buckeye Lumber Company or the National City Bank to have at any time demanded and received the carload of lumber is not involved, but rather the question controlling the case is, did the Parker-Bell Lumber Com-

pany, personally or through its collection agent, so negligently handle the initial bill of lading that reasonably and in the ordinary course of dealing in that community it would and did lead to the financial disadvantage of the respondent? That question has been answered in the affirmative by the evidence and the findings of the trial court. From December 14 to December 18, the last date being the one on which respondent commenced to pay out the $1,100 it had loaned, the appellant failed to take notice of the fact that it was not in possession of the bill of lading, which, under well known commercial practices, might be used just as this one was actually used. It remained in the possession of the Buckeye Lumber Company, the only one with whom it had been used in a business transaction for two days, and thereafter continued its commercial course two days before the respondent commenced to pay out the money it had loaned, time quite ample, all together, had the appellant exercised due care, to have recovered the original bill of lading from the Buckeye Lumber Company, or to have notified all of the carriers and banks of the city.

This is a clear instance, we think, as decided by the trial court, for the application of the familiar rule, founded on the best of reason, that where one of two innocent persons must suffer from the fraud of a third person, the loss should fall on him who, by his imprudence, enabled such third person to commit the fraud.

A further contention is made that the court wrongfully allowed eight per cent interest per annum instead of the legal rate of six per cent on the $1,100. The basis of the judgment, which we think was proper, was a recovery for a loss that would not have been sustained but for the imprudent conduct of the appellant,

which was $1,100, with interest at eight per cent per annum. Judgment affirmed.

PARKER, C. J., TOLMAN, FULLERTON, and BRIDGES, JJ., concur.