[No. 19067.   Department One.   March 16, 1925.]

A. R. LONG, *Respondent*, v. W. G. McAVOY, *Appellant*.[1]

ESTOPPEL (35-1)—SALES (178)—ACTS MAKING INJURY POSSIBLE AS
BETWEEN ACTOR AND ANOTHER EQUALLY BLAMELESS — CONDITIONAL
SALES—BONA FIDE PURCHASER FROM BUYER.   Where a conditional
bill of sale was obtained by fraud from the purchaser of an auto-
mobile, who signed it without reading it on the false representation
that it was a bill of sale of his old car, traded in on the deal, and
defendant acquired the bill of sale in good faith for full value in
the ordinary course of business, plaintiff, acquiring the car from
the original purchaser, after the recording of the bill of sale, is
guilty of negligence in not consulting the records from which he
could have learned of the bill of sale and the fraud; and he is
therefore the one of two innocent parties who must suffer and bear
the loss occasioned by the fraud of the original seller of the car.

SALES (179-1) — CONDITIONAL SALES — ASSIGNMENT OF CONTRACT.
One taking an assignment of a conditional bill of sale for full value
in good faith stands in the position of a *bona fide* purchaser, not-
withstanding the assignment was made to him in part payment of a
pre-existing debt.

Appeal from a judgment of the superior court for
King county, Smith, J., entered March 26, 1924, upon
findings in favor of the plaintiff, in an action in reple-
vin, tried to the court.   Reversed.

*Bausman, Oldham & Eggerman, W. L. Nossaman,*
and *Arthur E. Simon,* for appellant.

*Wright, Froude, Allen & Hilen,* for respondent.

BRIDGES, J.—While the testimony is very conflicting,
a careful reading of it convinces us that the following
are the true facts of this case: One Stafford was the
owner of an Elgin automobile.   The Mikado Auto Com-
pany of Seattle was the local agent for the Moon car.
Stafford bought of it one of its cars, turning in his
Elgin and paying the balance in cash.   The two cars
were at once delivered to the respective purchasers.

[1]Reported in 233 Pac. 930; 236 Pac. 806.

As Stafford was about to drive away, the manager of the auto company asked him to sign a bill of sale for the Elgin car, at the same time presenting to him a paper which was represented to be a bill of sale. This Stafford signed. It turned out to be a conditional sale contract between the auto company and Stafford, showing that the latter had agreed to purchase the Moon car and had paid a designated portion of the purchase price, and was to pay the balance of some $900 upon installments, title meanwhile to remain in the auto company. An ordinary promissory note was embodied in and made a part of the conditional sale contract, and this as well as the contract itself, was signed by Stafford. He thought he was signing a bill of sale for the Elgin car. At that time the auto company owed the defendant about $1,500, and it sold and assigned to him the conditional sale contract, together with the auto which it covered, in part payment of what it owed him. This contract was at once filed with the county auditor. After driving the Moon car awhile, Stafford sold it to the plaintiff, who paid cash therefor. At that time he obtained from the auto company a bill of sale to the Moon car and delivered it to the plaintiff. Both the plaintiff and the defendant were ignorant of the fraud practiced by the auto company on Stafford.

The defendant, for sometime past, had been doing considerable business with the auto company, apparently advancing money to it and purchasing its conditional sale contracts. To some extent he permitted the auto company to collect the payments on the various conditional sale contracts which he purchased, the payments when collected being turned over to him. One day the defendant found the automobile in question on one of the streets of Seattle and, acting under his contract (payments on which were in default), took possession of the car, and thereafter the plaintiff began this

suit in replevin, gave a bond and took back the car. This all occurred several months after the conditional sale contract was given. Meanwhile the auto company had paid to the account of the defendant certain of the installments called for by the conditional sale contract, but at the time defendant took the car other installments were due and unpaid. Before he took the car, defendant had demanded of Stafford the payment of the delinquent installments, but he refused to make them and repudiated the conditional sale contract upon which they were based. He took the matter up with the auto company, which made some indefinite explanations, and which, apparently, were not understood, or at least fully appreciated, by him. At that time the manager explained to him that its relations with the defendant were not friendly and handed Stafford $50 and asked him to deliver that sum to the defendant, requesting that it be credited on the conditional sale contract. Stafford complied, but without any intention on his part to adopt or ratify the contract. The auto company also told him that he need not pay any further attention to the contract and that it would not trouble him further.

We think the trial court was right in refusing to believe certain testimony to the effect that Stafford executed the conditional sale contract as an accommodation to the auto company. We are also satisfied that, had he read that instrument before signing it, he would have understood its purport and have known that it was not a bill of sale, and that in signing it he relied entirely upon the representations that it was a bill of sale. Our findings for the most part agree with those made by the trial court. It remains to apply the law to the facts as we have found them.

We have read many cases on fraud, estoppel, comparative innocence among buyers, and other subjects

which the facts of this case seem to involve, but we
have been unable to find in them any rule, supported
by a majority of the cases, that would lead us to a
decision upon the facts of this case. Such being our
situation, we have concluded to strike out for ourselves,
as it were.

Comparative innocence ought, it seems to us,
to be the principle upon which this case should
be decided. Where both parties to a suit are, in
a general sense, innocent, but one must suffer, there
ought to be no rules of law which would stand in
the way of placing the loss on him who is the least
innocent. That both appellant and respondent are, in
a sense, innocent of any wrongdoing or carelessness
must be conceded, and yet we think one of them is less
innocent than the other. The appellant had no knowl-
edge of the fraud which the auto company had prac-
ticed in securing the conditional sale contract which it
had sold to him. It was fair upon its face; it was a
document commonly dealt in; it had been properly ex-
ecuted; he had obtained it in the ordinary course of
business; he was not guilty of any negligence or lack
of caution. He was a purchaser without notice of any
defects of title or of equities vested in other persons.
It is true the respondent contends, and the testimony
seems to show, that at times he permitted the auto com-
pany to collect and pay over to him installments due
upon similar contracts held by him. But there is noth-
ing unusual in that. That kind of agency would not
make the appellant liable for the fraud committed by
the auto company. For the most part he put his con-
tracts in a bank which made the collections. If he had
invariably followed the practice of collecting the pay-
ments himself the result must have been the same, both
to him and to the respondent.

On the other hand, we think it may be said that if

Stafford should be charged with negligence in failing to read the conditional sale contract before he signed it, or to otherwise learn its contents, yet that negligence ought not to be attributable to the respondent. He knew nothing of this. He purchased the auto of Stafford and paid therefor. In these respects he was entirely blameless. But had he examined the public records, as was his duty, he would have discovered that this conditional sale contract was outstanding against this auto. That discovery would either have induced him to abandon the transaction or trace to its source the reason for the giving of the conditional sale contract. In either event, he would not have been injured. He failed to do that which an ordinarily reasonable man is called upon to do, to-wit, examine the public records for any instruments affecting the property which he is about to purchase. It seems clear to us that respondent was less innocent than appellant, and everything else being equal, he should stand the loss. What we said in *National City Bank v. Parker-Bell Lumber Co.*, 122 Wash. 29, 210 Pac. 10, is applicable.

"This is a clear instance, we think, as decided by the trial court, for the application of the familiar rule, founded on the best of reason, that where one of two innocent persons must suffer from the fraud of a third person, the loss should fall on him who, by his imprudence, enabled such third person to commit the fraud."

In 24 R. C. L. 315, it is said:

"Though as a general rule the maxim caveat emptor applies to the sale of personal property and the buyer acquires only such rights as the seller possessed, still, one who entrusts another with the indicia of ownership of personalty may be estopped to assert his title as against a bona fide purchaser, and it is well settled that where the seller has delivered possession to the buyer, although the sale was induced by the buyer's fraud and for such reason the seller would, as against

the buyer, be entitled to rescind and recover the property, still if the property has passed into the hands of a bona fide purchaser for value the right of the original seller to recover the property is lost.''

This text is supported by many cases. While that rule may be based on a somewhat different reasoning than that hereinbefore given by us, yet the result, at least as applied to this particular case, is the same. Many of the authorities recognize the doctrine of comparative innocence upon facts somewhat similar to those involved here. We will not cite them, however, as they are usually between persons related to the transaction as appellant and Stafford are in this instance. The appearance of respondent here makes a situation which is seldom met with in the cases.

But to be in a position where he may insist that the respondent must bear the loss, the appellant must have been something more than a bona fide—innocent—purchaser. He must have been a purchaser for value, and if he was not such, then the case should go against him, because he has not been placed in a position where he might suffer. He insists that he paid cash for the contract. But the testimony, as a whole, does not support him. According to it, the assignment was made to him in part payment of a pre-existing debt due him from the auto company. The authorities are in irreconciliable conflict on the question whether one who takes personal property in payment of an antecedent debt is a purchaser for value. Those cases holding that he is not base their rulings upon the idea that he has paid nothing in cash, he has not made any new contract, he has not altered his situation, and if he loses the property he is exactly where he was before the transaction was made, that is, his pre-existing debt still exists. It seems to us that these reasons are more plausible than sound. It is not true that, if the prop-

erty be taken from him, he is put in the same position he was before, and it is not true that he may not thereby be caused to suffer. He is changed from the position of one who has been paid to one who holds what may be a doubtful account. Between the time he has received his payment and the time he is made to return it, his position, and particularly that of his debtor, may have greatly changed. It is ordinarily impossible to put him in the same position he occupied before.

The facts in this case contradict the logic of the cases which hold that one who takes property in payment of an antecedent debt does not pay value. If the appellant had not obtained this conditional bill of sale and thereby had discharged, in part at least, the indebtedness to him from the auto company, he would have had an opportunity to have at least made an effort to collect the amount due him. But relying upon what he had a right to suppose were his just dues, he has failed for two or three years to take any proceedings against the auto company, which is now bankrupt, out of business and its principal officers in Japan. How can it be said that, if this conditional sale contract be declared void and unenforcible in his hands, he is in as good a position as he was before he purchased that instrument?

There are several of our cases which touch this subject, but they are not as harmonious as could be wished.

In *Scott v. McGraw,* 3 Wash. 675, 29 Pac. 260, it was held that an execution creditor has not paid value for the thing upon which execution is sought. But, plainly, that case cannot be controlling of the question here.

In *Woonsocket Rubber Co. v. Loewenberg,* 17 Wash. 29, 48 Pac. 785, 61 Am. St. 902, the facts were that a person had acquired personal property by fraudulent

means and then made an assignment for the benefit of creditors, and it was held that the creditors were not purchasers for value, and that the assignee could not hold the property as against the true owner. Plainly, this case is not controlling, although it must be admitted that there are some expressions in our opinion which would tend to indicate that a purchaser such as the appellant here has not paid value.

In the case of *Thomas v. Grote-Rankin Co.*, 75 Wash. 280, 134 Pac. 919, we seem to have squarely held that a transfer of personal property in payment of a pre-existing debt does not make the purchaser one for value.

On the other hand, in the cases of *Johnston v. Wood*, 19 Wash. 441, 53 Pac. 707; *Worley v. Metropolitan Motor Car Co.*, 72 Wash. 243, 130 Pac. 107, and *Guaranty Security Co. v. Coad*, 114 Wash. 156, 195 Pac. 22, 197 Pac. 326, in construing our conditional sale statute to the effect that all conditional sales of personal property shall be considered absolute as to "all . . . purchasers in good faith," unless certain things be done, we held that one who took personal property in payment of a pre-existing debt was a purchaser for value. While these cases are based upon the wording of a statute, yet the principle upon which the decisions rest is the same as that involved here. In the *Johnston* case, *supra*, Judge Dunbar discusses the question upon general principles and criticized the decisions which hold that such a purchaser does not pay value.

In *McLaughlin v. Dopps*, 84 Wash. 442, 147 Pac. 6, and *German-American Bank v. Wright*, 85 Wash 460, 148 Pac. 769, Ann. Cas. 1917D 381, we held that where the consideration for the purchase of a negotiable instrument was the payment of a pre-existing debt, there was a purchase in good faith and for value. These

two cases are based on our negotiable instruments act and should not be considered as controlling of the question here. To hold here that a transfer of property in payment of a pre-existing debt does not make the purchaser one for value would be to bring great confusion into our cases.

Following that which seems to us to be the most logical rule and the one which will more nearly lend itself to business interests, and which will more completely harmonize our own decisions on the subject, we hold that one who purchases personal property of any character, paying therefor by discharging a pre-existing debt, is a purchaser for value, and that the appellant here was such a purchaser.

The respondent contends that the transfer of this conditional contract of sale was given to secure a pre-existing indebtedness and was intended to be a mortgage, and that as such it was void as against him because of its many defects as a mortgage. We cannot accept this view. We think the testimony clearly shows that the intention of the auto company and of the appellant was that there should be a complete transfer of the title, not only to the conditional sale contract, but to the auto as well, and that the transfer was not intended in any manner to be one affording security.

This case has given us very much trouble. We realize that the conclusion to which we have come apparently works a hardship on the respondent, but a contrary conclusion would work an even greater hardship on the appellant.

The judgment is reversed, and the cause remanded for proceedings in accordance herewith.

TOLMAN, C. J., PARKER, MAIN, and ASKREN, JJ., concur.

## ON REHEARING.

[*En Banc.*   June 22, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein. The judgment of the superior court is therefore reversed, and the cause remanded for proceedings in accordance with the Departmental opinion.