[No. 20483. Department Two. August 12, 1927.]

ANNA KIBLER et al., Appellants, v. YAKIMA FINANCE
CORPORATION et al., Respondents.[1]

[1] PLEDGES (5, 6)—PLEDGEE AS BONA FIDE PURCHASER—EVIDENCE.
A *bona fide* pledgee of rings received from a fraudulent pur-
chaser obtains good title, as against the defrauded vendors,
even though the vendors' contract could have been avoided for
fraud.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered March 13, 1926,
upon findings in favor of the defendants, in an action
of replevin, tried to the court. Affirmed.

*Snively & Bounds,* for appellants.
*Williamson & LaBerge,* for respondents.

PARKER, J.—The plaintiff Mrs. Kibler commenced
an action in the superior court for Yakima county,
seeking recovery from the defendant finance corpora-
tion of four diamond rings. The plaintiff Mrs. Chris-
tianson, the daughter of Mrs. Kibler, on the same day
commenced another action in the same court seeking
recovery from the defendant finance corporation of
one diamond ring. Mrs. Besancon was, thereafter,
duly made a party defendant in each of those actions,
because the finance corporation received all of the
rings from her in pledge as security for a loan made
by it to her; she having theretofore received the rings,
four from Mrs. Kibler and one from Mrs. Christian-
son, while they were the owners of the rings.

Thereafter, these two actions were duly consolidated
and proceeded to trial as one action; the claims of Mrs.
Kibler and Mrs. Christianson being thereafter treated

[1]Reported in 258 Pac. 490.

by all concerned as being in common. So, we are not
now concerned with the question of any separate own-
ership in the rings, as between Mrs. Kibler and Mrs.
Christianson.

The trial was to the court without a jury and re-
sulted in findings and judgment denying to Mrs. Kibler
and Mrs. Christianson recovery as against the finance
corporation, but awarding them recovery in the form
of a money judgment against Mrs. Besancon. From
this disposition of the cases, Mrs. Kibler and Mrs.
Christianson have jointly appealed to this court.

In December, 1921, Mrs. Besancon induced appel-
lants, Mrs. Kibler and Mrs. Christianson, to purchase
from her certain shares of stock in an oil company.
They were then unable to pay any money for the stock.
They then delivered to Mrs. Besancon the five diamond
rings in question.

The principal disputed question of fact in this con-
troversy is, as to whether or not these five diamond
rings were delivered by appellants to Mrs. Besancon in
payment for the stock, or merely as security for the
payment of the agreed purchase price, to be made
later. The trial court found as follows:

"(2) That between Christmas and New Years, 1921,
the plaintiff, Anna Kibler, gave to the defendant,
Louise W. Besancon, four diamond rings, and the
plaintiff, Edna Christianson, gave to the defendant,
Louise W. Besancon, one diamond ring, in exchange
for certain stock in the Cheney Oil Company, a Wash-
ington corporation, under representations then made
by the said defendant, Louise W. Besancon, to said
plaintiffs that the said oil company would declare and
pay a dividend upon said stock on the first day of July,
1922, in excess of $5,000; that when said dividend was
paid on July 1, 1922, the said defendant, Louise W.
Besancon, would return said diamonds to the plaintiffs
upon being paid out of said dividends the sum of
$5,000 for said stock; that no other agreement was

entered into between said parties concerning the payment for said stock nor the return of said diamonds to the plaintiffs, in the event a dividend was not declared upon said stock; that said oil company did not pay a dividend on July 1, 1922, or at any time thereafter; that it was the purpose of plaintiffs to vest title to said diamonds in the defendant Louise W. Besancon and to repurchase the same from the dividend of said oil company, if any.

"(3) . . . That on the 16th day of June, 1922, the said defendant, Besancon, pledged five diamond rings to the said defendant corporation as security for a loan of $2,300, no part of which has been paid, except the sum of $1,000 on the first day of August, 1922, with interest thereon to the 16th day of October, 1922, leaving a balance due and unpaid of $1,300 with interest at the rate of eight per cent per annum from October 16, 1922; that the court is unable to determine from the evidence whether the rings so pledged by the defendant, Besancon, to the defendant, Finance Corporation, are the rings formerly belonging to the plaintiffs herein.

"(4) That, if the diamonds pledged with the defendant corporation by the defendant Besancon were obtained by said Besancon from the plaintiffs herein, the said defendant corporation had no knowledge or notice of that fact, nor knowledge of any fact which would put them on notice; that said corporation is, therefore, an innocent pledgee of said diamonds in the event said diamonds were obtained by the said defendant Besancon from the plaintiffs herein.

"(5) That the value of said diamonds, under stipulation of the parties hereto, is $2,345.

"(6) That at the conclusion of the trial the plaintiffs moved for judgment against the defendant, Louise W. Besancon, for the sum of $2,345 to which motion no objection was made, and the same was granted by the court."

The decision of the trial court was principally rested upon the theory that title to the rings passed from appellants to Mrs. Besancon, though the title so vested

in Mrs. Besancon may have been voidable because of fraud on her part; that appellants' right, with reference to the rings, was a mere right of repurchase; that the finance corporation became an innocent pledgee of the stock from Mrs. Besancon upon the making of the loan to her, by then actually paying over to her the money representing the loan; and that, therefore, the finance corporation is entitled to hold the rings, as security for the balance due upon the loan, as against appellants, as well as against Mrs. Besancon.

It is strenuously argued, in behalf of appellants, that the evidence does not warrant the conclusion that the rings were delivered to Mrs. Besancon in actual payment of the stock, with a mere right of repurchase by appellants. Our review of the evidence convinces us that it does not preponderate against this view of the trial court. Indeed, even reading it in cold type-written form, as we must, it seems to us to preponderate in support of this view of the trial court. We do not understand counsel for appellants to seriously contend that the pledge of the rings to the finance corporation by Mrs. Besancon was other than for a present loan, then actually made, and not for a past due indebtedness. Indeed, we see no room for such contention in the light of the evidence. Nor do we understand counsel for appellants to seriously contend that the finance corporation had any knowledge whatever of the alleged fraud incident to Mrs. Besancon acquiring the rings. So, we conclude that the legal title to the rings passed from appellants to Mrs. Besancon upon the sale of the stock by her to them, and that the finance corporation became an innocent pledgee of the stock for value; that is, parted with the money constituting the loan at the time of receiving the rings as a pledge security therefor.

[1] . The law, as we conceive it to be controlling in our present inquiry, is well stated in Jones on Collateral Securities (3rd ed.), § 56, as follows:

"The consequences of a sale or pledge of property held under a contract or transfer duly executed by the proper owner, though obtained from him by fraud, are very different. The contract or transfer between the immediate parties may be avoided by reason of the fraud, and the defrauded vendor may recover the property from the fraudulent purchaser, or from any one who has received it from him with knowledge of the fraud. But if the fraudulent purchaser has sold or pledged the property to another, who has taken it in good faith for value, the latter can hold it as against the defrauded vendor. In other words, while one holding possession of goods without the title can confer upon a pledgee no rights which the proper owner is bound to respect, one who holds not only the possession but also the indicia of title, though acquired by fraud, can confer upon a pledgee acting in good faith a lien which must be respected by the defrauded vendor."

In the text of 24 R. C. L. 315, the same view of the law, in substance, is expressed as follows:

"It is well settled that where the seller has delivered possession to the buyer, though the sale was induced by the buyer's fraud, and for such reason the seller would as against the buyer be entitled to rescind and recover the property, still if the property has passed into the hands of a *bona fide* purchaser for value the right of the original seller to recover the property is lost."

Observations made in our decisions in *Scott v. McGraw,* 3 Wash. 675, 29 Pac. 260, and *Long v. McAvoy,* 133 Wash. 472, 233 Pac. 930, 236 Pac. 806, are in harmony with this view of the law, though, in those cases, the problem was not presented exactly as it is here presented. See, also, Wells on Replevin (2nd ed.), §§ 333-337. As applicable to our present inquiry, we

think the rule is the same, whether the question be one of innocent purchaser for value or innocent pledgee for value. We are of the opinion that the finance corporation is entitled to retain the rings as security for the balance due upon its loan to Mrs. Besancon, not only as against her, but also as against appellants.

Some other arguments are advanced by counsel for the finance corporation in support of the judgment rendered in its favor, but, in view of what we have already said, we need not pursue our inquiry further.

The judgment is affirmed.

MACKINTOSH, C. J., TOLMAN, and FRENCH, JJ., concur.