[No. 20236.   Department Two.   April 7, 1927.]

COMMERCIAL CREDIT COMPANY, *Appellant*, v. NATIONAL CREDIT COMPANY, *Respondent*.[1]

[1] SALES (179-1)—CONDITIONAL SALES—ASSIGNMENT—EFFECT. The assignment of a conditional sales contract of an automobile, reciting that it passes all the right, title and interest of the vendor, conveys all title to the property and the unpaid purchase price; and is not in effect a chattel mortgage for the security of money by reason of a provision guaranteeing to the assignee full payment of the unpaid purchase price due from the vendee, and providing that in case of default the assignee may reclaim the car and recover the balance of the unpaid purchase price under the guaranty of the vendor.

[2] SAME (175, 179-1)—CONDITIONAL SALES—FORM AND CONTENTS OF INSTRUMENT—ASSIGNMENTS. As between the parties to a conditional sales contract, and also as between the vendor and his assignee, a description of a car as a "Nash Roadster" is sufficient where all were sufficiently advised as to the car referred to.

[3] SAME (177, 179-1)—CONDITIONAL SALES—OPERATION AND EFFECT AS TO THIRD PERSONS—ASSIGNMENT OF CONTRACT. Where a conditional sales vendor assigns the contract and the assignee, after repossessing the car for default, leaves it with the vendor as a bailee for storage, such bailee cannot convey a good title to another as a *bona fide* purchaser because of the fact of a defective description in the first conditional sales contract which was good as between the parties to it.

[4] SAME (179-1, 182)—CONDITIONAL SALES—ASSIGNMENT—REMEDIES OF SELLER OR ASSIGNEE. The assignee of a conditional sales contract of an automobile, with the vendor's guaranty of the balance of the purchase price, who repossessed the car for default in payment and left it with the vendor as a bailee for storage, did not elect to abandon its title to the car and look only to the purchase price, by asking the vendor's aid in inducing the vendee to take back the car and make the payments guaranteed by the vendor.

Appeal from a judgment of the superior court for King county, Hon. Marion Edwards, judge pro tem-

[1]Reported in 255 Pac. 104.

pore, entered July 15, 1926, upon findings in favor of the defendant, in an action of replevin, tried to the court. Reversed.

*John J. Kennett,* for appellant.

*Shorts & Denney* and *C. R. Hovey,* for respondent.

PARKER, J.—The plaintiff, Commercial Credit Company, seeks recovery of a Nash roadster automobile, or, in the alternative, a money judgment for the value thereof, from the defendant, National Credit Company. A trial upon the merits in the superior court for King county sitting without a jury resulted in findings and judgment denying to the plaintiff any recovery, from which it has appealed to this court.

The controlling facts, as we read this record, may be summarized as follows: On May 1, 1925, the Wyman-Payson Motor Company of Mt. Vernon, Skagit county, entered into a conditional sale contract with G. J. Roberts of that county for sale to him of the car in question, the car being then delivered to him by the motor company; the agreed sale price being $1,792.80 upon which he made a cash payment of $550, agreeing to pay the balance in ten equal monthly installments. On May 2, 1925, the motor company, by endorsement on the back of the conditional sale contract, made an assignment to appellant, Commercial Credit Company, reading as follows:

"For value received, the agreement (on the reverse side) and the note therein mentioned between G. J. Roberts and the undersigned, and the property therein described, and all the right, title and interest therein of the undersigned are hereby sold, assigned and transferred to Commercial Credit Company, San Francisco, Calif., its successors or assigns. The undersigned jointly and severally hereby guarantees full perform-

ance of said agreement in all its terms and the prompt payment of any and all sums provided therein, together with collection expenses, costs and attorney's fees, and agrees to pay the attorney's fees and costs of enforcing this agreement. The undersigned jointly and severally hereby agrees that in the event of the non-compliance with any of the conditions of this agreement, whether or not repossession has been made or undertaken, suit may be brought by the holder against any one or more or all of the parties hereto, whether or not suit has been commenced against the party or parties to the agreement and without waiving any rights to later repossess. The undersigned jointly and severally hereby agree that in the event of repossession, the entire balance outstanding under such agreement shall become immediately due and payable. The undersigned jointly and severally hereby waives any and all notice of nonpayment demand, presentment or protest, which may be required under said agreement, or note mentioned in same, or in connection therewith, and agrees that any extensions which may be granted by the holder hereof to the parties to said agreement shall not in any manner release the undersigned.

"Dated this 2nd day of May, 1925.
"At Mt. Vernon, State of Wn.
                    Signed "Wyman Payson Motor Co. (Seal)
                            "By E. H. Wyman."

On May 4, 1925, the conditional sale contract and assignment was duly filed for record in the office of the auditor of Skagit county. On September 25, 1925, Roberts being in default in payments entitling the owner of the car to forfeit his rights under the conditional sale contract, and appellant, claiming to be the owner of the car by virtue of the assignment above quoted and entitled to exercise such right of forfeiture, caused its agent, Mr. Mourning, to seize and take the car from Roberts, so evidencing its intent to forfeit and terminate all rights of Roberts to the car under the conditional sale contract. Appellant's agent then took

the car to the motor company's garage and place of business at Mt. Vernon, leaving it there, as we think the evidence shows, only in storage without any intent to part with any right thereto possessed by appellant under the conditional sale contract and the assignment thereof. It appears that when the automobile was taken by appellant's agent from Roberts, they had an understanding to the effect that Roberts might be able within a few days to redeem his rights under the conditional sale contract, and that he might do so by going to the motor company's place of business where it was agreed between them the car would be temporarily stored, and, upon paying to the motor company for appellant the unpaid installments upon the contract, retake the car and thereby have his rights under the conditional sale contract fully restored. The motor company was plainly advised of this understanding between appellant's agent and Roberts at the time the car was left in its charge by appellant's agent. Roberts, however, never exercised this right, though, as we shall presently see, appellant was led by the motor company to believe that Roberts did exercise this right.

On September 20, 1925, the motor company, assuming ownership of the car, entered into another conditional sale contract with Roberts for the sale of it to him, then again delivering it to him; the agreed sale price being $1,762.75, Roberts being credited with $875 thereon, and agreeing to pay the balance in twelve equal monthly installments. This transaction between Roberts and the motor company did not become known to appellant until shortly before the commencement of this action. On September 30, 1925, appellant, being ignorant of the making of a new conditional sale contract with Roberts by the motor company, wrote to the motor company as follows:

"Seattle, Washington.
September 30th, 1925.
"Wyman Payson Motor Co.
"Mount Vernon, Washington.
Re: G. J. Roberts
1925 Nash Rds.
Mtr. No. 207536.
"Gentlemen:
"We have a report from our Mr. Mourning that the above listed car was repossessed and on your floor.

"For your information the past due installments are represented by the July, August and September 1st payments each in the amount of $124.28.

"We would appreciate your forwarding this amount and make arrangements to pay off the entire balance of $1118.52 by the 15th of October.

"Your cooperation in regard to this will be very much appreciated by the writer.

"Very truly yours,
(Signed) "G. T. Harding."

Mr. Harding, whose name is signed to this communication, was the credit manager of appellant at its Seattle office. A few days thereafter, the motor company sent to appellant's Seattle office a check for $500, as appellant was led to believe by the communication accompanying the check, as payment from Roberts upon the conditional sale contract which had been assigned by the motor company to appellant. Soon thereafter, on October 9, appellant again wrote from its Seattle office to the motor company acknowledging receipt of that payment as follows:

"Seattle, Washington, October 9, 1925.
"Wyman Payson Motor Co.
"Mt. Vernon, Wash.
"Re: G. J. Roberts
Repossessed Nash Rds.
Mtr. No. 207536.
"Gentlemen:
"We acknowledge receipt of your check in the amount

9—143 WASH.

of $500.00 which was received in our office some time ago.

"This left a balance of $618.52 and after adding the $21.30 repair bill paid by our adjuster, Mr. Mourning, to secure the release of the car, leaves an outstanding balance of $639.82.

"The remittance which you forwarded takes care of the past due installments, but it is now the policy of the Company to have repossessed cars taken up within 15 days of the repossession and for that reason we would appreciate very much your cooperating with us and making some arrangements to take up the remainder of the balance by the 15th of October.

"Very truly yours,

(Signed) "G. T. Harding."

The evidence, we think, clearly shows that appellant was warranted in assuming, at all times up until shortly before the commencement of this action, that Roberts had resumed possession of the car under the conditional sale contract of May 1, 1925. Later, respondent took possession of the car from Roberts, claiming its right so to do as assignee of the second conditional sale contract between the motor company and Roberts and his default in payments upon that contract. Appellant, learning of this, soon thereafter made a demand upon respondent for possession of the car, and such demand being refused, soon thereafter commenced this action in February, 1926, resulting in the judgment here on appeal which was rendered July 14, 1926.

[1] The principal ground upon which the trial court rested its decision seems to be that the assignment of May 1, 1925, by the motor company to appellant, was made only as security for the amount which the motor company received as consideration for the assignment, and hence made only as a chattel mortgage, and not being legally so executed in that there was no affidavit of good faith or filing of record as a chattel mortgage, the

assignment was therefore void.  The conveying words in the assignment are:

"For value received, the agreement (on the reverse side) and the note therein mentioned between G. J. Roberts and the undersigned, and the property therein described, and all the right, title and interest therein of the undersigned, are hereby  sold, assigned and transferred to Commercial Credit Company."

Clearly, under our decisions, these words of the assignment convey all right and title in and to the property and the unpaid purchase price, possessed by the motor company, unless clearly limited by other words of the assignment.  *Barbour v. Hodge,* 99 Wash. 578, 170 Pac. 115; *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235; *Western Lumber Exchange v. Johnson,* 110 Wash. 200, 188 Pac. 388; *Martin v. McAvoy,* 130 Wash. 641, 228 Pac. 694.

The other language of the assignment, it seems to us, has to do only with the guaranty of the motor company to appellant of the performance by Roberts of the conditional sale contract on his part.  Such a guaranty we have held neither adds to nor detracts from the rights or obligations of a conditional sale contract vendee, he not being a party to the assignment and guaranty contract.  *Western Lumber Exchange v. Johnson,* 110 Wash. 200, 188 Pac. 388; *Martin v. Mc-Avoy,* 130 Wash. 641, 228 Pac. 694.

Nor do we think the words of the assignment that the motor company agrees with appellant "that in the event of repossession the entire balance outstanding under such agreement [the conditional sale contract] shall become immediately due and payable," withhold from appellant the right to reclaim the car and avoid the sale instead of treating the balance due as a debt owing upon the agreed purchase price, and thus confirm the sale.  If appellant had unconditionally sur-

rendered the car to the motor company, which we think it did not do, this provision of the assignment would probably result in the whole balance becoming due and payable, as between the motor company and appellant, under the guaranty of the motor company to appellant. We think this is all that the guaranty and acceleration payment provisions of the assignment mean.

[2] Contention is made in behalf of respondent that, in any event, the conditional sale contract of May 1, 1925, between the motor company and Roberts, was void because of insufficient description of the car, it being described merely as a "Nash roadster," but this description was plainly good as between the motor company and Roberts and consequently good as between appellant, as the motor company's assignee, and Roberts; they being fully advised as to the car with reference to which the conditional sale contract was made.

[3] It seems to us that, when appellant's agent, having taken the car from Roberts, it then having good title thereto by virtue of the assignment, and left it in storage at the garage and place of business of the motor company, that company had charge of it merely as a bailee for appellant and had no more right or power to contract for another sale of it to respondent than it would have the power to so contract for the sale of a car of any other person so left in its charge. It is not a question of respondent being charged with knowledge of the ownership of this car by some public record. The motor company was not holding it under a conditional sale contract or otherwise than as a mere bailee for appellant.

[4] Some contention is made that appellant irrevocably elected to abandon its title to the car, which it had acquired by the assignment of the conditional sale contract from the motor company, by its placing of the car

in charge of the motor company, writing the above quoted letters to the motor company requesting it to make arrangements to pay off the balance of the purchase price and by acknowledging receipt of five hundred dollars from the motor company as payment upon such balance. We do not see in this conduct of appellant any election to abandon its title to the car acquired by the assignment. It seems to us there was nothing unusual in appellant suggesting to the motor company or asking of the motor company aid in inducing Roberts to make payments as agreed in the conditional sale contract which it, the motor company, had guaranteed would be made by Roberts. This conduct on the part of appellant was not, we think, an election to look alone to the contract price stipulated in the conditional sale contract as payable from either Roberts or the motor company and abandon all claim of title to the car. This did not constitute the commencement of any legal proceeding looking to the recovery of the agreed purchase price, as in *Eilers Music House v. Douglass,* 90 Wash. 683, 156 Pac. 937, L. R. A. 1916E 613, or an assignment of a separate negotiable note evidencing the purchase price, to a third party, as in *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817. A mere request for payment does not constitute an election to look alone to a recovery of the agreed purchase price.

It is finally contended in behalf of appellant that, in the event of our reversal of the judgment of the trial court and directing judgment to be awarded in its favor, the value of the car should be determined to be one thousand dollars instead of eight hundred dollars as it was found to be by the trial court. This is a question of fact as to which we think the evidence does not preponderate against this finding of the trial court. We,

therefore, adopt eight hundred dollars as the value of the car. It is conceded in the record before us that the car cannot be returned by reason of it having been long since disposed of by respondent.

We conclude that the judgment of the trial court denying to appellant recovery must be reversed, and that it is entitled to a money judgment against respondent in the sum of eight hundred dollars, with legal interest thereon from July 14, 1926, the date of the disposition of the cause by the rendering of the judgment in favor of respondent. It is so ordered, and the cause remanded to the superior court with directions to enter a final judgment accordingly in favor of appellant, Commercial Credit Company, and against respondent, National Credit Company.

MACKINTOSH, C. J., ASKREN, and TOLMAN, JJ., concur.