[No. 21286. Department Two. October 8, 1928.]

D. FLYNN, *Respondent*, v. GARFORD MOTOR TRUCK COMPANY, INCORPORATED, *Appellant*.[1]

[1]Reported in 270 Pac. 806.

*Kenneth Durham,* for appellant.
*Lund & Dodds,* for respondent.

BEALS, J.—Plaintiff instituted this action for the purpose of recovering damages from defendant for the alleged conversion of a motor truck chassis. This chassis or truck was, prior to January 1, 1926, sold for cash by defendant, the agent for the Garford Motor Trucks in Seattle, to one C. W. Ludolph, a dealer in automobiles, having his place of business in the city of Spokane.

On February 26, 1926, Ludolph sold this truck by contract of conditional sale to the plaintiff, and assigned the contract of sale and conveyed title to the truck, subject to the contract, to one Frank D. Stoop. The contract of conditional sale, bearing the assignment from Ludolph to Stoop, was, on March 4, 1926, filed in the office of the auditor of Spokane county, where the same was noted upon the conditional sale index.

Plaintiff did not take possession of the truck, but left it with Ludolph who, on May 6, 1926, without the knowledge of plaintiff or Stoop, executed and delivered to defendant a bill of sale of the truck in question, the consideration therefor being a credit given Ludolph by defendant on account of the purchase of another truck. This bill of sale was not recorded and the truck

remained in possession of Ludolph until the latter part of July, 1926, when defendant assumed possession thereof and removed it to Seattle where it was sold by defendant in the usual course of its business. Mr. Ludolph had become financially involved late in the spring of 1926, and soon after defendant had taken possession of the truck, late in July, abandoned his business and absconded.

Plaintiff paid the first five monthly installments of the purchase price of the truck, each in the sum of one hundred and eighty dollars; and, making no further payments on account of the purchase, Mr. Stoop, during the month of June, 1927, commenced an action in the superior court for Spokane county against plaintiff and his wife in which he sought to recover the balance of the purchase price due under the contract, disclaiming in his complaint all interest in the truck and electing to declare the sale absolute and sue for the balance of the purchase price. The truck was of the value of about three thousand dollars, the contract of conditional sale from Ludolph to plaintiff giving credit for an initial payment in the sum of $928, which credit represented the agreed value of an old truck belonging to plaintiff which was turned in to Ludolph on account of the purchase price. Plaintiff never took possession of the Garford truck, but at all times left the same with Ludolph who at first kept the same in his warehouse; later on, without plaintiff's knowledge, moving it to the second floor of his retail establishment, where it remained until taken into the possession of defendant.

Plaintiff in his complaint alleged simply his ownership of the truck and its conversion by defendant, to his damage; defendant in its answer denied the allegations of plaintiff's complaint and pleaded affirmatively its sale of the truck to Ludolph prior to January 1,

1926; that in April of that year Ludolph advised defendant that he had the truck on hand, unused, and requested defendant to repurchase the truck, which defendant did, taking from Ludolph a bill of sale thereof; that Ludolph at that time had the truck on display as part of his stock; that plaintiff had left the truck in the possession of Ludolph and thereby constituted Ludolph his agent to sell the same, and that the defendant had purchased the same without notice, for value and in good faith. The affirmative allegations of defendant's answer were denied by plaintiff in his reply. Trial of the action resulted in a judgment in plaintiff's favor for the value of the truck, from which judgment defendant appeals.

The findings of the trial court do not indicate bad faith on the part of either respondent or appellant. Appellant urges that the evidence indicates bad faith on the part of respondent, but we conclude that no bad faith has been shown to exist on the part of either party, and we assume that both respondent and appellant were throughout the transaction acting in entire good faith.

The following sections of Remington's Compiled Statutes are pertinent to this case:

"§ 5827. No bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the county in which the property is situated, within ten days after such sale shall be made. [L. '54, p. 404, § 4; etc.]"

"§ 3790. That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all *bona fide* purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within

ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides. [L. '15, p. 276, § 1, etc.]''

"§ 3791. It shall be the duty of the county auditor wherein any such memorandum is presented to him for that purpose, to file all such instruments, upon payment of proper fees therefor, indorse thereon the time of reception, the number thereof, and he shall enter in a suitable book to be provided by him at the expense of his county, with an alphabetical index thereto, and exclusively for that purpose, ruled into separate columns with appropriate heads, 'The time of filing,' 'Name of vendor,' 'Name of vendee,' 'Date of instrument,' 'Amount of purchase price,' and 'Date of release.' An index of said book shall be kept in the manner required for indexing deeds to real estate, and the county auditor shall receive for the services required by this chapter the sum of twenty-five cents for each instrument, and the money so collected shall be accounted for as other fees of his office. Such instrument shall remain on file for the inspection of the public until full payment has been made thereon, and shall be satisfied or canceled in the same manner and upon payment of same fees as chattel mortgages are satisfied or canceled. [L. '93, p. 254, § 2; L. '03, p. 6, § 2.]''

"§ 3791-1. If a written contract for the conditional sale of personal property be assigned by the vendor to secure a debt or other obligation, the assignee, in the absence of a contrary intent expressed in the assignment, shall have the right to enforce all the vendor's remedies under the contract, and, if such contract and/or assignment thereof shall be filed as provided by law, the assignee shall have a lien upon the property covered thereby as against the vendor and his creditors and subsequent purchasers and encumbrancers, which lien may be enforced as a chattel mortgage is enforced. [L. '25, Ex. Ses., p. 189, § 1.]'' (Rem. 1927 Sup., § 3791-1.)

"§ 5836-25. Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge, or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same. [L. '25, Ex. Ses., p. 367, § 25.]" (Rem. 1927 Sup., § 5836-25.)

"§ 5836-23. . . .

"(2) Nothing in this act, however, shall affect: (a) The provisions of any factor's acts, recording acts, or any enactment enabling the apparent owner of goods to dispose of them as if he were the true owner thereof; . . . [L. '25, Ex. Ses., p. 367, § 23.]" (Rem. 1927 Sup., § 5836-23.)

 Appellant argues that respondent has no right to maintain this action. It appears from the record before us that Mr. Stoop, the successor in interest to Mr. Ludolph, brought suit against respondent for the balance of the purchase price of the truck and waived, as successor in interest of the conditional vendor, all claim on his part to repossess the same. Such action by Mr. Stoop vested title to the truck in respondent. This is an action brought by the vendee under a conditional sales contract for conversion of the property sold under the conditional sale, and respondent claims the right to maintain the same because of the fact that the entire title to the property has passed to him by reason of the acts of Stoop, the successor in interest to his vendor. In other words, his position in this action is the same as though he had paid in full for the property according to the terms of the agreement of conditional sale and had received an absolute conveyance of the property. We conclude that respondent

may, in this action, present to the court his title for consideration and adjudication. *Messenger v. Murphy,* 33 Wash. 353, 74 Pac. 480; *Oros v. Allen,* 133 Wash. 268, 233 Pac. 314; *West American Finance Co. v. Finstad,* 146 Wash. 315, 262 Pac. 636.

■ This is a case of considerable difficulty, there being no existing statute which covers exactly the situation here presented to us for decision.

Rem. Comp. Stat., § 10601, provides for the recording by county auditors of certain instruments specified therein, Sub-section (7) thereof providing for the recording of

"All such other papers or writings as are required by law to be recorded and such as are required by law to be filed if requested so to do by the party filing the same."

In view of Rem. Comp. Stat., § 5827, *supra,* it must be held that a bill of sale is such an instrument as may be recorded in the office of a county auditor and, when so recorded and indexed, constitutes constructive notice.

Section 3781 provides for the filing of chattel mortgages and for the keeping by the county auditor of an alphabetical index used exclusively for chattel mortgages. Section 3790 (above quoted) provides for the *filing* of conditional sales of personal property, and § 3791 for the keeping by each county auditor of an alphabetical index used exclusively for such conditional sale agreements.

■ This court has held that, in the absence of a statute authorizing the recording of an instrument of a certain character, the recording of such an instrument does not operate as constructive notice. *Howard v. Shaw,* 10 Wash. 151, 38 Pac. 746; *Fischer v. Woodruff,* 25 Wash. 67, 64 Pac. 923, 87 Am. St. 742; *Dial v. Inland Logging Co.,* 52 Wash. 81, 100 Pac. 157.

The first question in this case to be determined is, Was the filing of the conditional sale agreement between Ludolph and respondent, bearing the assignment thereof from Ludolph to Stoop, constructive notice to appellant of the fact that Ludolph had parted with his title to the truck which is the subject-matter of this action? It does not appear that either party had any *actual* notice of the claim of the other until sometime after appellant had taken possession of the truck late in July, and we find no warrant in the evidence for finding that circumstances existed which would naturally or reasonably put either party upon any particular inquiry.

Respondent relies upon Rem. Comp. Stat., §§ 3790, 3791, *supra,* and contends that he is protected by the filing of the conditional sale agreement.

Rem. Comp. Stat., § 3791, provides for the filing by county auditors of agreements of conditional sale and directs that each auditor shall enter in a book provided with an alphabetical index, ruled in separate columns, with appropriate heads, certain data therefrom, including "Name of vendor," and "Name of vendee," and the conditional sale from Ludolph to respondent, with the assignment to Stoop, was so filed and indexed.

Manifestly, it has been, ever since 1854 (§ 5827, *supra),* the general policy of the legislature of this jurisdiction to favor the title of the purchaser of personal property from one in possession in cases where that person had previously sold the property to another who had left the property in the possession of his vendor. The first purchaser may protect himself by recording his bill of sale within ten days of the date of the purchase, but, failing to do this, the transfer to him is ineffective as against creditors or innocent purchasers. *Barbour v. Hodge,* 99 Wash. 578, 170 Pac. 115; *United States Fid. & Guar. Co. v. Ryan,* 124 Wash. 329,

214 Pac. 433, 39 A. L. R. 109. While in this state there is no "market overt" (*State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235), still something of that doctrine has been enacted into statute law, applicable to cases where a person sells personal property but still retains possession thereof. Also it has been held that possession on the part of a vendee means real possession (*Churchill v. Miller,* 90 Wash. 694, 156 Pac. 851; *Houghland v. Wolfe,* 122 Wash. 473, 210 Pac. 805), not simply technical possession or what might constitute possession in law as between vendor and vendee.

The spirit of § 5827 has been carried into the "Uniform Sales Act" (Rem. 1927 Sup., § 5836-25, *supra*), which provides that, in case a vendor continues in possession of the goods sold and subsequently resells the same to any person who purchases them in good faith, for value and without notice, he should be considered the agent of the prior vendee for the purpose of making such sale. It is also evident that the main purpose of § 3790, *supra,* was to protect persons dealing with conditional sale *vendees,* as it makes the ownership of such vendees absolute as to all persons dealing with them in good faith, unless the contract of conditional sale be filed for record in the office of the auditor of the county wherein the vendee resides at the date of his taking possession of the property. Certainly, the vendee's possession was the possession considered by the legislature in enacting this law, because the act, according to its terms, applies only to cases "where the property is placed in the possession of the vendee," and it also provides for the filing of the conditional sale in the office of the auditor of the county wherein the vendee resides at the time possession of the property was delivered to him; which filing, in cases where the vendor and vendee reside in different counties,

would be utterly unavailing to give notice of the vendee's rights to persons subsequently dealing with the vendor in cases where the property was still in his possession.

Under the recording acts of this state, *recording* and *filing* are two different things. The general method of making instruments affecting the title to property, real or personal, a matter of public record is to record the same, the law providing that two special classes of instruments, chattel mortgages and conditional sales, may be *filed,* each class comprising a separate group, carried under its own special index without any reference to the general indices maintained by county auditors.

In our opinion, the filing of a conditional sale agreement as such (the same not being recorded pursuant to § 5827), in cases where the property covered thereby is left in the possession of the vendor, is not constructive notice to persons subsequently, in good faith and for value, purchasing the same property from the vendor.

Respondent earnestly contends that Rem. 1927 Sup., § 3791-1, *supra,* which provides for the filing of an assignment of a conditional sale contract, which assignment is executed "to secure a debt or other obligation," such section protecting the assignee in his lien upon the property covered by the conditional sale as against the vendor, his creditors and against subsequent purchasers and encumbrancers, constitutes such an assignment as that from Ludolph to Stoop an instrument entitled to record, and that consequently appellant in this case had constructive notice of Stoop's rights, and, Stoop's title to the truck having passed to the respondent, respondent can now claim the benefit which Stoop could have claimed.

This enactment does not protect respondent; it au-

thorizes only the filing of an assignment of a condi-
tional sale executed *to secure a debt or other obliga-
tion;* in other words, such an assignment as is given
for security only and not an assignment which is
absolute as it is agreed by all parties was the assign-
ment from Ludolph to Stoop. This court, in the case
of *Bank of California v. Danamiller,* 125 Wash. 255,
215 Pac. 321, 36 A. L. R. 753 (a case decided prior to
the enactment of § 3791-1, *supra*), discussed at length
the distinction between a mere assignment for security
of a conditional sales contract and an assignment to
one who purchased such contract outright. The fact
that this decision was handed down prior to the enact-
ment by the legislature of § 3791-1, *supra,* constitutes
an added reason for construing that section strictly
and exactly in accordance with the language used. It
is also true that a recording act cannot be extended
by implication, but must be literally construed in the
absence of ambiguity or language requiring judicial
interpretation. This holding may seem very technical,
but the law relied upon by respondent is clear and it
is not for the courts to say that the legislature in-
tended more than it said. The rule laid down in the
case of *Fischer v. Woodruff, supra,* is unquestionably
sound, and we unqualifiedly adhere to that doctrine.
*State Bank of Black Diamond v. Johnson, supra,* as
construed in the case of *General Motors Acceptance
Corp. v. Arthaud Land Co.,* 118 Wash. 593, 204 Pac.
194.

We accordingly hold that the assignment from
Ludolph to Stoop was not such an instrument as is
entitled to record, and that its filing was not construc-
tive notice to appellant of any right claimed there-
under. What effect this section might have on an as-
signment absolute upon its face but in fact given for
security, it is not necessary for us at this time to de-

termine, as the assignment from Ludolph to Stoop was unquestionably absolute, both by its terms and by intention.

The fact that Ludolph guaranteed the payment of all monies due and to become due under the contract and the full performance by the vendee therein named of his promises and agreements does not make the assignment one for security only, but simply states an additional agreement or covenant on the part of Ludolph the assignor. *State Bank of Black Diamond v. Johnson, supra; Commercial Credit Co. v. Nat. Credit Co.,* 143 Wash. 253, 255 Pac. 104. Our ruling upon this point renders it unnecessary to discuss appellant's contention that under § 3791-1 an assignment of a conditional sale given as security, to constitute constructive notice, must be filed as a chattel mortgage and not as a conditional sale.

Rem. 1927 Sup., § 5836-25, *supra,* being a portion of the "Uniform Sales Act," is in our opinion controlling in this case, in view of our decision that the filing of the conditional sale was not constructive notice to appellant. Subdivision 23 of this act (Rem. 1927 Sup., § 5836-23, *supra*) provides that nothing in that act shall affect any recording statute, but, as we hold that the filing of the conditional sale agreement was not constructive notice to appellant, it follows that § 5836-25 is applicable to the situation now before us.

It often happens, as in this case, that one of two innocent persons must suffer a serious loss due to the rascality of a third party with whom the two separately dealt and in whom they had confidence. Assuming in this case that both parties were equally innocent, we would conclude, if we were deciding the case upon equitable grounds, that the respondent took less precaution and by his conduct placed Ludolph in a posi-

tion to defraud appellant and is therefore responsible for his actions. Ludolph was a dealer in automobiles; the truck which respondent purchased from him was a part of his stock in trade; respondent left the truck with his vendor, and in view of the long established and entirely reasonable policy of our law, should, in equity and good conscience, be held responsible for the acts of Ludolph in subsequently disposing of the truck to a third party. On this phase of the case the recent case of *Champagne v. Birnot*, 143 Wash. 187, 254 Pac. 829, is decidedly in point. While the facts are somewhat different, the discussion by the court of the comparative equities is instructive and supports the conclusion which we reach in the case at bar. To this effect also is *General Motors Acceptance Corp. v. Arthaud Land Co., supra.*

Respondent relies upon the case of *State Bank of Black Diamond v. Johnson, supra.* In this case the original vendor, whose position corresponds to that of Ludolph in the case at bar, sold an automobile under conditional sale and delivered possession thereof to the vendee. Later on the vendor repossessed the car and again sold it, and it was held that he could not give good title thereto as against the claim of his assignee whose position corresponds with that of Mr. Stoop in this case. The possession of the vendor, when the second sale was made, was therefore of a nature entirely different from that of Ludolph who was at all times in possession of the truck which he sold first to respondent and then to appellant. Other facts appear in the opinion which indicate further distinctions between the case cited and the case at bar, but the difference which we have indicated in the nature of the possession of the person who made the double sale of the personal property in controversy is sufficient to differentiate the two cases.

The judgment is reversed with instructions to dismiss the action.

FULLERTON, C. J., ASKREN, HOLCOMB, and MAIN, JJ., concur.