[No. 22975.   Department Two.   March 23, 1931.]

NORTHWESTERN FINANCE COMPANY, *Appellant*, v. C. E. RUSSELL *et al., Respondents.*[1]

*Adams & Driver*, for appellant.

*Wm. A. Grimshaw*, for respondents.

BEALS, J.—From on or about January 1, 1929, until the following July, one W. P. Watkins was engaged in business in the city of Wenatchee as a dealer in Hupmobile cars, under the trade name of Watkins Motor Company.   During at least the first portion of this period, Charles H. Rose was a salesman in the

[1]Reported in 297 Pac. 186.

employ of Mr. Watkins, and early in January plaintiff, Northwestern Finance Company, a corporation which was dealing in commercial paper of various classes, was requested by Mr. Watkins to purchase a contract of conditional sale which Mr. Watkins stated he was about to enter into with Mr. Rose, whereby Mr. Rose was to agree to purchase an automobile.

Plaintiff's agent stated that, upon submission of the contract, the matter would be investigated, and the agreement was thereafter prepared, dated January 19, 1929, written on a form furnished by plaintiff, executed by the parties, and submitted to plaintiff, together with what is designated as a "purchaser's statement," signed by Mr. Rose, containing a description of the car purchased, together with information from which an opinion could be formed as to Mr. Rose's financial standing and general responsibility.

The contract itself, which is in form a combination of promissory note and conditional sale of personal property, was signed by Mr. Watkins, as vendor, and Mr. Rose, as vendee, and by the former assigned to plaintiff, Mr. Rose also signing a statement on the contract to the effect that he had been advised of the assignment. The instrument, together with the assignment endorsed thereon, was, within ten days of its date, filed as a "conditional sale and assignment document" in the office of the auditor of Chelan county. According to the contract, the purchase price of the car was $1,621.50, payable, together with interest, in monthly installments.

It clearly appears from the documents submitted to plaintiff, and from information furnished plaintiff in other ways, that Mr. Rose was a salesman in the employ of Mr. Watkins, and that he intended to keep the machine at the latter's place of business and use it as a "demonstrator." During the month of March,

1929, plaintiff learned that the automobile was in the possession of defendant C. E. Russell, who had purchased the car from Watkins about February 1, after the filing of the contract of conditional sale.

In the course of time, plaintiff demanded of Mr. Russell that he make to plaintiff the payments called for by the contract between Watkins and Rose, of which contract plaintiff held the assignment, or deliver the car; and, upon Mr. Russell's refusal either to make the payments or surrender the car, plaintiff instituted this action, took possession of the car under a writ of replevin, and disposed of the same. Defendants Russell answered plaintiff's complaint, alleging facts which, they contended, showed that they were the owners of the car, and upon the trial of the action before the court sitting without a jury, judgment was entered in defendants' favor for the value of the machine, from which judgment plaintiff appeals.

The assignments of error may properly be considered together, no question being raised upon the admission or exclusion of evidence, and appellant contending that, under the evidence, judgment should have been rendered in its favor.

In addition to the facts above stated, which are admitted or clearly established by the evidence, it appeared that Mr. Russell was approached by Messrs. Watkins and Rose in an endeavor to sell him the automobile which is the basis of this controversy. The sale was finally agreed upon, Mr. Russell trading in, at a valuation of one thousand dollars, his Dodge sedan (which he had purchased in December, 1926, for thirteen hundred ten dollars), the balance of the purchase price of seventeen hundred dollars to be paid in cash. After the terms were agreed upon, Mr. Rose brought the car to Mr. Russell, who turned over his check for seven hundred dollars, payable to Mr.

Watkins, and the Dodge car, which Mr. Rose drove away.

It is admitted that the Russells did not examine the records in the office of the county auditor to ascertain whether or not the same disclosed any instrument affecting the car which they were buying. It is also evident that Mr. Russell was allowed a good trade-in price for his Dodge sedan, some of the witnesses testifying that in January, 1929, the Dodge had a trade-in value of not to exceed five hundred dollars. Mr. Russell admits that he had refused to negotiate with Mr. Rose for the purchase of the car from him, but had insisted on dealing with Mr. Watkins.

It clearly appears from the evidence that Mr. Rose kept the car at the salesroom and garage maintained by Mr. Watkins, and the trial court made a finding of fact to the effect that Mr. Watkins was apparently the owner of and in possession of the machine, and was offering it for sale as such owner. To this, and to other findings of fact made by the trial court, appellant excepted. Testimony was introduced to the effect that Mr. Rose on this car used a dealer's license.

We are satisfied that appellant, in purchasing the contract of conditional sale, and respondents, in purchasing the automobile, were acting in good faith, the question here being, under the facts as above outlined, which of the two innocent parties must bear the loss occasioned by the rascality of the unscrupulous dealer.

Appellant argues that, because respondents were allowed a high trade-in value for their old car, their attention was thereby called to the fact that Watkins and Rose were evidently very anxious to make a deal, and respondents were thereby put on notice that some irregular practice was in contemplation of the parties with whom they were dealing, and that respondents

should have made further investigation before completing the transaction.

Granting that respondents were aware that Messrs. Watkins and Rose were anxious to make a sale, we do not think the circumstances relied upon by appellant were sufficient to put respondents upon inquiry as to the title held by the persons with whom they were dealing, to the car for which respondents were negotiating. Watkins was a dealer and Rose was his salesman; it was only natural that they should be anxious to sell a machine, and they might well allow a high trade-in value for the purpose of making a sale. The amount allowed for the old car was not so great as to give ground for suspicion.

In our opinion, these circumstances not so much suggested to respondents that Watkins and Rose were acting in bad faith as did the circumstances under which appellant purchased the contract indicate to it that the purported sale from Watkins to Rose was not a *bona fide* transaction, but was colorable merely, and that the whole transaction was merely for the purpose of setting up a contract which Watkins could discount, thereby enabling him to procure some cash to assist him in financing his new business venture.

Appellant relies upon the case of *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235, in which a bank was allowed to recover upon a paper title similar to that here presented by appellant, as against a defendant who purchased a car from the plaintiff's assignor under circumstances very like those disclosed by this record. In the course of the opinion, it is stated that the court assumes, for the purposes of the opinion, that the defendants had no constructive notice because of the filing of a contract of conditional sale and an assignment thereof, presenting a similar situation to that

here disclosed. The court based its decision upon the proposition that the doctrine of market overt did not prevail in this state, and that the defendants purchased the automobile from one who had no title whatever therein. No elements of estoppel were present, and the doctrine of comparative innocence was not discussed.

Appellant also cites the decision of this court in the case of *Long v. McAvoy,* 133 Wash. 472, 233 Pac. 930, 236 Pac. 806, in which it was held that a party who purchased an automobile from one who, being the owner of the car, had been induced by fraud to sign a contract of conditional sale thereof, could not, in a subsequent contest over the car, prevail as against one who had in good faith purchased the fraudulently procured contract and seasonably filed the same, together with the assignment thereof. In the case last cited, it is, of course, true that the plaintiff, had he searched the records in the office of the county auditor for instruments, previously executed by his proposed vendor, affecting the title to the car which he was buying, would have found the contract of conditional sale, concerning which his vendor had no knowledge, the same having been procured from him by fraud, he being of the impression that he was signing an instrument affecting an entirely different car. The recording act applicable exactly fitted the situation there presented, the vendee named in the contract fraudulently procured being in possession of the car.

The case was decided upon the ground of comparative innocence, the court being of the opinion that the defendant (who occupied the position comparable to that of appellant here) was entirely innocent, being a purchaser without notice, guilty neither of negligence nor lack of caution, while the plaintiff was guilty of some negligence, in that he failed to examine the

public records for a contract of conditional sale running to his vendor. In the case cited, it must be remembered that the person from whom the plaintiff purchased the automobile which was the subject matter of the litigation was not an automobile dealer. He was engaged in some other line of business, and one purchasing an automobile under such circumstances would be more likely to make investigation concerning the title to the car than would one purchasing a new machine from a dealer.

The doctrine of comparative innocence certainly, in the case at bar, bears more hardly upon appellant than did it upon the person occupying the position corresponding to that of appellant here in the case of *Long v. McAvoy, supra.* Here appellant discounted a contract whereby a dealer in automobiles agreed to sell a new car to his own salesman. Appellant knew that the car was to be used by the salesman for demonstration purposes, and kept at his employer's place of business. The contract from Watkins to Rose called for no down payment; the entire purchase price being payable in monthly installments. Respondent, on the other hand, purchased an apparently new car from an established dealer having the local agency for the make of car so purchased. We find in the record no circumstances which would tend to put respondents upon notice that there was anything out of the ordinary in their purchase of the car from Watkins. As above stated, we are satisfied that the fact that respondents received a good trade-in allowance for their old car, did not, under the circumstances here disclosed, put respondents upon inquiry.

It is also of some significance to note that, while appellant learned about March 23rd that respondents were in possession of the car under claim of ownership, appellant took no steps to notify respondents of

its claim to the car until July 19th following, but sought to enforce payment of its claim against Messrs. Watkins and Rose, and did make some collections from Mr. Watkins. It would seem that, if the equities of the case are to be considered, appellant should have promptly notified respondents of its claim, so that respondents might at the earliest possible date have had an opportunity to protect themselves against loss by taking steps against their vendor. Upon the question of the comparative innocence of the parties, the facts shown by this record preponderate in favor of respondents.

Considering the case, however, from a purely legal standpoint, we are of the opinion that the decision of the trial court was correct. A somewhat analogous situation was considered in the case of *Flynn v. Garford Motor Truck Co.*, 149 Wash. 264, 270 Pac. 806, and the rule was there laid down that a purchaser of personal property, who leaves the property in the possession of his vendor, and fails to seasonably record his bill of sale, as required by Rem. Comp. Stat., § 5827, cannot maintain his title to the property as against one who in good faith purchases the property from the original vendor and takes possession thereof.

The filing of the contract of conditional sale, together with the assignment thereof to appellant, was not the equivalent of the recording of a bill of sale of the property, as contemplated by § 5827, *supra*. Appellant knew that the machine was, to all practical intents and purposes, remaining in the possession of Watkins; it was to be kept in or about Watkins' place of business and used by his salesman for purposes of demonstration. This is true, whether the purported sale to Rose was a *bona fide* transaction, or colorable merely. Were this controversy pending between Mr. Rose and respondents, a different question would be

presented, in so far as the effect of the filing of the contract of conditional sale is concerned, but such is not the situation here presented, and appellant's legal rights depend, not upon the fact that, had respondents searched the index of contracts of conditional sale, they would have found the contract between Watkins and Rose, with the incidental assignment to appellant, but upon the fact that appellant took to itself a transfer of the title of the automobile, and failed to record its bill of sale in the office of the county auditor.

In determining the questions here at issue, it is necessary to consider, in connection with this situation, all the facts and circumstances of the case, and particularly appellant's knowledge as to the connection of Mr. Rose with the business conducted by Mr. Watkins, and the fact that the car was to be used by Mr. Rose in connection with his work as a salesman in the employ of Mr. Watkins, and that the car would be used as a demonstrator. In considering the entire question here presented, it is also worthy of note that, although Mr. Rose was present in court during the trial as a witness on behalf of appellant, he was not called to the stand.

In the cases of *Long v. McAvoy, supra,* and *Champagne v. Birnot,* 143 Wash. 187, 254 Pac. 829, it is to be observed that the court considered the equities existing in favor of the parties respectively, as of importance in determining the issues presented.

We do not find it necessary to discuss the possible bearing upon this case of chapter 142, Laws of 1925, Ex. Ses., p. 355, the "uniform sales act," § 25 of which (Rem. 1927 Sup., § 5836-25) refers to the resale of goods by a seller in possession of goods already sold, which section is relied upon by respondents.

At the close of the opinion in the case of *Long v. McAvoy, supra,* the court stated, as we may well say

here, "This case has given us very much trouble," and, transposing the words "appellant" and "respondent," as contained in the last paragraph of that opinion, "We realize that the conclusion to which we have come apparently works a hardship on the *appellant,* but a contrary conclusion would work an even greater hardship on the *respondent.*"

The judgment appealed from is affirmed.

TOLMAN, C. J., BEELER, and MILLARD, JJ., concur.