[No. 24531. *En Banc.* February 16, 1934.]

COMMERCIAL CREDIT COMPANY, *Appellant,* v. WARLAND G. CUTLER, *Respondent.*[1]

[1]Reported in 29 P. (2d) 686.

424

*LaBerge, Cheney & Hutcheson,* for appellant.
*Bonsted & Nichoson,* for respondent.

BLAKE, J.—This is an action in replevin, brought to recover possession of an automobile held by defendant. From a judgment entered on findings favorable to defendant, plaintiff appeals.

On March 23, 1931, and for some eight or ten months prior thereto, Elmer Daggett was employed as a salesman by Yakima Automobile Company. On that date, the company sold him a six cylinder Chrysler automobile on conditional bill of sale. Daggett paid two hundred dollars in cash, and received credit for an additional two hundred and thirty dollars by way of discount, the company relinquishing its profit on the transaction in that amount. The balance of the purchase price was payable in eighteen monthly installments of $51.20 each. On the same date, the Yakima Automobile Company assigned the contract to appellant under a "guaranteed endorsement." On March 31, 1931, the conditional bill of sale and endorsement were filed, pursuant to Rem. Rev. Stat., § 3790. Appellant knew at the time it took the assignment that Daggett was an employee of the automobile company.

Daggett continued in the employ of the Yakima Automobile Company as a salesman, and used the car in question as a demonstrator. The car, while it was used by Daggett, at all times carried a "dealer's license" plate. Daggett made the payment on the contract due April 23d direct to appellant. The next payment, due May 23d, was made by a check of the automobile company, payable to Daggett and endorsed by him to appellant. Thereafter, five monthly payments were made by checks of the automobile company to appellant, and charged to Daggett's account.

On July 1, 1931, after some negotiations with Daggett and one Swan, president of the Yakima Automobile Company, respondent purchased the car. There is no question that he was led to believe that Yakima Automobile Company was the owner of the car, and that he was buying the car from the company. He had no actual knowledge of the sale to Daggett, or of appellant's interest in it; nor did he examine the records. He did know, however, that he was buying a demonstrator and not a new car. He paid $1,160 for it, which was represented to him to be the price of a new car. He paid four hundred dollars in cash, which was credited to Daggett on the books of the automobile company, and turned in an Oakland car at $760. This Oakland car was never carried in the inventory of the automobile company. It was afterward sold for three hundred dollars, which amount was also credited to Daggett's account on the company's books. It is not contended that appellant had any knowledge of the sale of the car to respondent until shortly before this action was brought.

The problem presented is whether the filing of the conditional bill of sale to Daggett and the assignment thereof to appellant, pursuant to Rem. Rev. Stat.,

§ 3790, protected appellant in its rights in the car as against respondent. Put in another way: Was respondent bound by the constructive notice the law implies from a filing of the instrument made in compliance with that section?

It will be remembered that Rem. Rev. Stat., § 3790, provides that conditional sales, where the property is placed in possession of the vendee, shall be absolute as to *bona fide* purchasers, unless a memorandum of the transaction be filed with the county auditor within ten days of the date of delivery of the property.

We have held that, under an absolute assignment from the vendor of a conditional bill of sale, filed pursuant to this statute, the assignee acquires not only the right to collect the unpaid purchase price, but all the vendor's right, title and interest in the property as well. *State Bank of Black Diamond v. Johnson*, 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235; *Western Lumber Exchange v. Johnson*, 110 Wash. 200, 188 Pac. 388; *Martin v. McAvoy*, 130 Wash. 641, 228 Pac. 694; *Commercial Credit Co. v. National Credit Co.*, 143 Wash. 253, 255 Pac. 104. And in these same cases, we have held that a subsequent purchaser from the vendor (the vendor, under varying circumstances, having come again into possession of the property) acquired no interest in the property against such an assignee. The cases further hold that a guarantee of payment by the vendor, accompanying the assignment, in no wise impairs the rights of the assignee in the property.

If the rule of these cases is applied, it is clear that the judgment of the trial court cannot be sustained. But respondent contends, and the trial court held, that the rigidity of the rule of these cases has been

relaxed in cases where the vendee under the original conditional bill of sale is an employee of the vendor.

There is substantial ground for this position to be found in the case of *Northwestern Finance Co. v. Russell,* 161 Wash. 389, 297 Pac. 186. In that case, the dealer, Watkins, sold a car to his employee, Rose, under conditional bill of sale. No down payment was made, however. Rose left the car in the possession of Watkins, who kept it on the floor of his salesroom, which fact was known to the finance company when it purchased the contract. Furthermore, after the finance company learned of the sale to Russell, it still sought to collect from Watkins and Rose on the contract. Not for three months thereafter did it bring its action of replevin against Russell. The court held that the sale to Rose was colorable; that it was a scheme for double financing, with notice of which the finance company was chargeable under the facts disclosed by the record.

In the instant case, the trial court was of the opinion that the facts disclosed by the record were closely analogous to the facts in the *Russell* case. In this, the court was correct. But in making application of the rule in the *Russell* case, we must bear in mind that what the court there held (and all that it held) was that the sale to Rose was merely colorable, and that the finance company was chargeable with notice that it was colorable under the facts disclosed by the record. In the case at bar, the court made no finding (and we do not think the evidence would warrant such a finding) that the sale to Daggett was colorable.

While, as we have indicated, there are many facts in this case which are similar to the facts in the *Russell* case, still there are several important differences. There is every indicia in the record of this case that the sale to Daggett was genuine. He made a down payment of two hundred dollars cash. There was none

such in the *Russell* case. Daggett took possession of the car, drove it home, and kept it in his own garage at night. Russell purchased what he supposed to be, and what apparently was, a new car. In the instant case, while the car was sold to respondent on the price basis of a new car, he knew it had been used as a demonstrator. Allowance, apparently, for that reason, was made to him on his Oakland in a much larger amount than its blue book list price.

To sustain the judgment of the trial court in this case, would necessitate an extension of the rule of the *Russell* case to such a degree as to deprive an assignee under a properly filed bill of sale of the protection afforded by Rem. Rev. Stat., § 3790, in all cases where personal property is sold to an employee of the vendor. We do not feel that we can extend the rule to such length.

It is suggested by respondent that agents of appellant made frequent visits to the place of business of the Yakima Automobile Company, and that they could and should have known that the car was being exhibited and used in such a manner as might deceive persons dealing with Daggett and the automobile company; that the car carried a dealer's license; that it was, at times, allowed to stand on the floor of the automobile company's salesroom and apparently in its possession. It is not contended that such facts were known to these agents. We cannot hold that they or appellant were chargeable, in law, with knowledge of these facts, without denying an assignee of a properly filed conditional bill of sale the protection afforded by Rem. Rev. Stat., § 3790.

It is further contended by respondent that appellant, as assignee of the Yakima Automobile Company, was in the position of a vendee of personal property in possession of the vendor, and therefore it was

necessary for appellant to have the bill of sale and assignment *recorded*. In support of this contention, he cites the case of *Flynn v. Garford Motor Truck Co.*, 149 Wash. 264, 270 Pac. 806. In that case, a *vendee* under a conditional sales contract left the property in the possession of the vendor. The action was brought by the *vendee* to recover damages for conversion of the property by a subsequent purchaser from the *vendor*. The plaintiff contended that the filing of the conditional sales contract under which he claimed was notice to the subsequent purchaser of his interest in the property. The court there held that plaintiff, not having complied with Rem. Rev. Stat., § 5827, could not recover. That statute provides that

"No bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the county in which the property is situated, within ten days after such sale shall be made."

The court very distinctly pointed out the distinction in applicability of this statute and Rem. Rev. Stat., § 3790, by saying:

"It is also evident that the main purpose of § 3790, *supra*, was to protect persons dealing with conditional sale *vendees*, as it makes the ownership of such vendees absolute as to all persons dealing with them in good faith, unless the contract of conditional sale be filed for record in the office of the auditor of the county wherein the vendee resides at the date of his taking possession of the property. Certainly, the vendee's possession was the possession considered by the legislature in enacting this law, because the act, according to its terms, applies only to cases 'where the property is placed in the possession of the vendee,' . . ."

That case holds simply this: That the vendee of personal property who leaves the property in posses-

sion of the vendor is afforded no protection by the *filing* of the conditional bill of sale, pursuant to Rem. Rev. Stat., § 3790, because that statute is only designed to give constructive notice of the *vendor's* rights to purchasers from the *vendee;* that the *vendee* who leaves the property in the possession of the vendor can give constructive notice of his interest in the property only by recording the bill of sale, pursuant to Rem. Rev. Stat., § 5827; that the latter statute is for the protection of *vendees,* and the former for the protection of *vendors.*

It seems clear to us that the case of *Flynn v. Garford Truck Co., supra,* has no bearing whatever on the problem here involved. To say that the assignee of the vendor under a conditional sales contract must *record,* as well as *file,* the instruments, would be simply to read into Rem. Rev. Stat., § 3790, the terms of Rem. Rev. Stat., § 5827, which, as pointed out in the *Flynn* case, pertains to a wholly different relationship.

Judgment reversed.

MAIN, MITCHELL, MILLARD, STEINERT, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—I fear that the majority has not given sufficient weight to the facts as found by the trial court. Here at the very foundation of the vital question is the good faith, or lack of it, which entered into the transaction between the Yakima Automobile Company and its employee Daggett. The trial court found against such good faith, and that is the finding which the majority has overruled.

In addition to the facts recited by the majority, there are some others which are very pertinent to be here considered; and I think also some of the facts recited have not been given the prominence or weight which they deserve. The trial court found that the Yakima

Automobile Company was the exclusive sales agent for this type of car in Yakima and vicinity, that it had possession of this car at all times here in question, held itself out as the owner and displayed it for sale at its place of business bearing its dealer's license. In addition to that, and as showing the purpose which actuated both the automobile company and its employee Daggett, the president of the automobile company acted with Daggett throughout in making the sale of this car to the respondent, an innocent purchaser for value.

As I read the evidence, it does not preponderate against these findings, and we are therefore bound by them.

Without reference to the question of whether, at that particular time, there was a well-defined purpose to defraud some one, it is a fact beyond question that it was the intention from the beginning that the automobile company should retain apparent possession, apparent title, and the apparent right to sell, and should sell the car to some innocent purchaser. That it may have then been intended to use the purchase money received from such an innocent purchaser to extinguish the interest of the finance company, is wholly immaterial. The fraudulent purpose was to deceive the general public and cause prospective purchasers to believe that the automobile company had a good right to sell the car and transfer an unencumbered title. The fraud consisted in the purpose so to sell the car, and that fraud was fully consummated. It may be that the automobile company would, if financially able, have paid out and extinguished the title of the finance company, but such an intention in no way mitigates or excuses the actual fraud of selling as its own an automobile to which it had no title.

In my opinion, therefore, there was actual fraud and a lack of good faith inherent in the transaction from

the inception, and that fraud was consummated when the automobile company purported to transfer the car with full title to the respondent and received from him the full purchase price.

Respondent was certainly an innocent party. We see no way where, by the exercise of reasonable care, he could have possibly protected himself. Presumably, he wanted this type of car. There was no other agency in Yakima from whom it could be purchased. He went to the recognized and authorized dealer, found this car in its possession bearing its license plates, and found in it every evidence of full title and the right to sell and transfer such title. Had he searched the records for a chattel mortgage or any other lien on the car given by the automobile company, he would have found nothing. Had he searched for a conditional bill of sale to the automobile company, he would have found nothing.

There was absolutely nothing, as I see it, to even suggest to him that he should search the records for a bill of sale given by the automobile company. Why should he? The automobile company was apparently in full possession; and who, finding a car in the possession of an authorized dealer, and bearing his license plates, would ever think to search the index of grantors in conditional bills of sale before purchasing?

Upon the other hand, the appellant was advised before it parted with its money that Daggett was a salesman in the employ of the automobile company, and knowing that fact, and before parting with its money, it demanded and received from the automobile company a full, complete and absolute guaranty of the whole transaction; something far beyond the ordinary limited guaranty exacted by this finance company and all other finance companies in the ordinary and regular transaction. Having been so advised of a setup which,

on its face, would permit a fraud to be perpetrated upon an innocent purchaser, it ought in good conscience to refuse to lend itself to the plan, or should have taken precautions to prevent the carrying out, by and with its aid, of any such plan.

It is said that the finance company had the right to purchase such a contract. Very true, but it had no right to lend itself to the perpetration of a fraud; and when it decided to enter into a picture which it knew was designed to deceive, it should be held bound to take all possible precautions, ordinary and extraordinary, necessary to prevent its participation being used as a part of the plan to deceive an innocent purchaser who, even though diligent, had no opportunity to protect himself.

Because, with knowledge, the finance company lent itself to a plan known to be inimical to the rights of innocent purchasers, and also under the rule of comparative innocence and the authority of *Northwestern Finance Co. v. Russell,* 161 Wash. 389, 297 Pac. 186, the judgment should, in my opinion, be affirmed.

BEALS, C. J., and HOLCOMB, J., concur with TOLMAN, J.